**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ruth D. SMITH, Defendant-Appellant.**

No. 83–1235
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1984.

---

1. Flores relied on the insanity defense.

2. Trial record, vol. 9, 12–13.

3. *Id.,* vol. 15, 222.

Bobby R. Taylor, Austin, Tex., for defendant-appellant.

Sidney Powell, Archie Carl Pierce, Asst. U.S. Attys., Antonio, Tex., for plaintiff-appellee.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

PER CURIAM:

Ruth Smith appeals her conviction for conspiracy to possess and distribute and for distribution of hydromorphone (dilaudid) on three grounds: the introduction of extrinsic-offense evidence against her, prosecutorial misconduct and improper instruction of the jury. Finding no error warranting reversal, we affirm the conviction.

I.

In the government's case in chief, an agent of the Drug Enforcement Administration (DEA) testified that she approached Trina Knox on July 24, 1981, and told Knox that she wished to purchase dilaudid pills. Knox went with the agent to Gal's Recreation Hall in Austin, Texas, where Knox told the agent she could purchase eighteen pills for $600. The agent gave Knox the money and saw Knox and Smith exchange the money for a vial of pills which were later found to be dilaudid. The agent also testified that she returned to Gal's Recreation Hall on July 29, when she bought dilaudid from Thelma Alexander, and on August 3, when she purchased six dilaudid pills direct-

ly from Smith at the direction of Alexander. Smith agreed to continue to supply the agent with dilaudid.

Smith was indicted for both conspiracy to possess and distribute the drug and for two counts of distribution, under 21 U.S.C. §§ 841(a)(1) and 846. Knox and Alexander were indicted as co-conspirators. After a jury trial, Smith was convicted on all three counts. She received three concurrent seven-year sentences and a special parole term. Smith then lodged this direct appeal.

## II.

Smith raises three grounds for the reversal of her conviction. First, she contends that the testimony of Trina Knox that she had purchased dilaudid from Smith on several occasions prior to the dates of the conspiracy charged was improperly admitted and that its admission prejudiced her defense. Second, Smith argues that the district judge erred in failing to declare a mistrial after the prosecutor asked an improper question of her during cross-examination. Third, Smith contests the district court's refusal to give a jury instruction she requested regarding the testimony of Knox. We address each of these issues in turn.

## III.

Trina Knox was called at trial as a defense witness. Although her story varied somewhat from the DEA agent's version of the relevant transactions, Knox's testimony as a whole supported the government's case. Over Smith's objection, the district court allowed the government to elicit the following testimony from Knox on cross-examination:

Q Why did you go to Ruth Smith to get the pills?

A To see what kind of a deal I could get from her.

Q Why did you think that she would be in a position to provide you dilaudids?

A I don't know. That is why I went to her.

Q Have you bought from her before?

A Yes.

Q How many occasions before?

A I don't remember.

Q More than six?

A I don't remember.

Q Numerous times?

A (nodding negatively).

Q Give us an answer, please.

A Yes, several times.

Clearly, this testimony represents evidence of an "extrinsic offense," i.e., one not charged in the indictment in the case sub judice.[1] In *Beechum,* this circuit established a two-step test for determining the admissibility of such evidence under Fed.R. Evid. 404(b). First, the district court must determine if the evidence offered is relevant to an issue other than the character of the defendant. 582 F.2d at 911. Here, the government, prior to the quoted cross-examination, advised the court that it intended to elicit testimony from Knox that she had previously purchased dilaudid from Smith for the purpose of establishing "intent, motive and scheme." Although the government's proffer could have been more detailed, the existence of an ongoing pattern of drug transactions between Smith and Knox was relevant to those issues. The relevance is particularly underscored by the fact that Smith's offense was essentially a denial of the drug transactions with which she was charged.[2] Second, the trial court must determine that the probative value of the evidence is not substantially outweighed by undue prejudice. The testimony here was clearly probative; indeed, it could hardly have been more probative. The defendant had made intent an important trial

1. *United States v. Beechum,* 582 F.2d 898, 902 n. 1 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

2. At the time of Knox's testimony, Smith had not taken the stand, as she later did, to testify that she had never sold narcotics to any person and had never entered Gal's Recreation Hall for any purpose other than to service a juke box which she maintained there. It was, nevertheless, clear that the defendant's main strategy was that the DEA informant was lying and that the defendant had not provided drugs to the DEA agent as charged.

issue.[3] The government offered to prove that the defendant had previously sold the same drug to the same person who acted as a go-between in the sale to the DEA agent. Eye-witness testimony of a transaction identical to that with which a defendant is charged is undeniably probative of intent, motive and scheme; and where intent has been, in effect, flatly denied, the value of the evidence is great, and will outweigh prejudice resulting to the defendant, except in the most exceptional cases. Thus, although the challenged testimony was clearly prejudicial to Smith, we cannot say that Knox's testimony was *unfairly* prejudicial to her.

Smith also contends that the district court erred in refusing to grant a mistrial after the prosecutor asked an improper and prejudicial question of her. Smith testified in her own defense. On cross-examination, the prosecutor asked:

Q Would it surprise you to know that Miss Knox was addicted to those pills?

A I did not know what she was addicted to.

Q I know that but it surprised you to find out that she was addicted to those pills?

A It wasn't a surprise, really.

Q You did not know or have any idea that she had such a problem?

A (Pause)

Q —Based on the relationship you had with her?

A No.

Q Mrs. Smith, do you feel any responsibility at all for the suffering that you have caused to Miss Knox—

MR. TAYLOR: Your Honor, I am going to object to this line of questioning.

THE COURT: Sustain the objection.

The court thereafter instructed the jury to disregard the prosecutor's question and denied Smith's motion for a mistrial.

Although this court does not approve of abusive questioning, especially where, as here, the question was solely for the purpose of prejudicing the jury against the defendant, we do not find the prosecutor's comment so prejudicial as to require the declaration of a mistrial. Not every instance of prosecutorial misconduct warrants a mistrial. Here the government presented a strong case against Smith, supported by the testimony of a government agent and a co-defendant of Smith. In the light of that evidence and the trial judge's curative admonition to the jury, we uphold the trial judge's ruling on the motion for mistrial. *See United States v. Nation,* 701 F.2d 31, 34 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 175, 78 L.Ed.2d 158 (1983); *United States v. Aguirre Aguirre,* 716 F.2d 293, 300 (5th Cir.1983).

Finally, Smith argues that the district judge committed reversible error in refusing to give the following jury instruction which she requested:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant.

In reviewing the refusal of the district court to give a requested jury charge, we must examine the manner in which the jury was actually charged. A defendant is entitled to reversal for such refusal only if the actual charge, taken as a whole, does not correctly reflect the issues and the law of the case. *United States v. Harrelson,* 705 F.2d 733, 736–37 (5th Cir.1983). In examining the record, we find that the district judge gave an instruction which more properly defined Trina Knox's role in the case than did the defendant's proposed instruction.[4] Since there was no other witness

---

**3.** When the defendant makes intent an important trial issue by taking the stand and "professing the innocence of his intent," the defendant waives any right to contest the govern-ment's prior presentation of evidence to the contrary. *Beechum* 582 F.2d at 915–16.

**4.** The court instructed the jury as follows:

who even arguably could be considered an informant, the jury charge, taken as a whole, was proper.

### IV.

For the reasons we have stated, the judgment of the district court is

AFFIRMED.

In this case, a witness was called who was an alleged accomplice, named as a co-defendant in the indictment, with whom the Government has entered into a plea agreement providing for the dismissal of some charges and a lesser sentence than she would otherwise be exposed to for the offense to which she pled guilty. Such plea bargaining, as it's called, has been approved as lawful and proper, and is expressly provided for in the rules of this Court.

An alleged accomplice, including one who has entered into a plea agreement with the Government, does not thereby become incompetent as a witness. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. However, the jury should keep in mind that such testimony is always to be received with great caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt; and the fact that an accomplice has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person.