**UNITED STATES of America,
Plaintiff-Appellee**

v.

**Andrew J. FOWLER, and Edgar E. Fowler, Defendants-Appellants.**

No. 83–4713.

United States Court of Appeals,
Fifth Circuit.

June 20, 1984.

Rehearing Denied July 23, 1984.

 

 
 
 
 
 
 
 

 

 
 
 

 
 
 
 
 
 
 

 

 
 
 
 
 
 

 
 
 
 
 

 
 
 
 
 

J. Michael Small, Kathrine S. Williamson, Alexandria, La., for defendants-appellants.

Joseph S. Cage, Jr., U.S. Atty., D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before GEE, RANDALL, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Andrew J. (A.J.) Fowler and his brother, Edgar E., were charged in a federal grand jury indictment with conspiracy to defraud the United States (Count I) and mail fraud (Counts II and III) in violation of 18 U.S.C. §§ 371, 1341, and 1342.[1] A jury convicted Edgar of conspiracy, but acquitted him on the two substantive counts. A.J. was convicted on all three counts. The Fowlers appeal their convictions on the grounds that: (1) the evidence was insufficient to convict them; (2) the district court erred in refusing to give certain of their requested jury instructions; (3) the district court erred in making certain evidentiary rulings; and (4) the district court erred in denying their Supplemental Motion for New Trial based on newly discovered evidence. We conclude that the evidence was sufficient to sustain appellants' convictions for conspiracy to defraud the United States. While we also hold that the evidence was sufficient to convict A.J. Fowler of mail fraud, we conclude that the trial court erred in refusing to give the substance of A.J.'s requested jury instruction that good faith is a defense to the charge of mail fraud.

Accordingly, we affirm the conspiracy convictions, but reverse A.J.'s conviction for mail fraud and remand for a new trial.

I. Facts

A.J. Fowler was an independent businessman who bid on contracts for refuse disposal and grounds maintenance at federal facilities across the nation. His brother Edgar worked for him as the supervisor of the "grass job" at Fort Hood in Killeen, Texas. On September 1, 1981, the Procurement Division of the United States Army at Fort Bliss, Texas, advertised a contract solicitation for the collection and disposal of refuse. The date for opening bids was February 19, 1982, at 10:30 a.m. Under defense acquisition regulations, all bids had to have been received prior to bid opening. In the event a bid was received after bid opening, it was ineligible unless it was postmarked five days prior to the bid opening date. In this instance, eligible late bids had to have been postmarked prior to February 14, 1982.

On February 12, 1982, A.J. mailed his original bid from Bunkie, Louisiana, in a certified letter numbered P–208–073–776 (776). This bid was received at Fort Bliss prior to the bid opening date, which was February 19, 1982. On February 13, 1982, A.J. mailed an envelope to Edgar in Pineville, Louisiana, lightly addressed in pencil and bearing certified mail number P–208–073–777 (777). Because of prior irregularities noted by other procurement officers and the United States Postal Service concerning A.J.'s previous bidding activities, a "mail cover" was placed on mail addressed to Edgar.[2] United States Postal Investigators therefore intercepted envelope "777" and marked it with an invisible substance so that it could be identified if it subsequently reentered the mails. The envelope was then returned to the Pineville post

---

1. The A.J. Fowler Corporation was also charged in the three-count indictment. At the close of the government's case-in-chief, a motion for judgment of acquittal on all counts was granted in favor of the corporation. Record Vol. 9 at 391.

2. The government introduced evidence at trial showing that the brothers were involved in a similar scheme in a prior contract solicitation at a federal facility. See discussion in text, Part IV *infra*.

office and delivered to Edgar's residence. On February 16, A.J. retrieved envelope "777" and erased the addresses, leaving the stamps and the February 13 postmark.

On February 19, the bid opening date, A.J. called the Fort Bliss Procurement Office and made inquiry concerning the lowest bid received. On February 22, A.J. advised a procurement officer that he had mailed an amended bid in an envelope with certified mail number "776" or "778". A.J. had in fact readdressed, in ink, envelope "777" which had been retrieved from Edgar's residence and had replaced the certified mail number "777" with "778". When "778" was received at Fort Bliss, a postal inspector signed for it and personally delivered it to the contracting supervisor, where it was opened in the presence of two postal inspectors. The envelope was then returned to the postal service for inspection. Upon examination by shortwave light, postal investigators discovered that envelope "778" was the same envelope (formerly envelope "777") that had been previously delivered to Edgar. On the basis of the bid contained in "778", A.J. was awarded the disposal contract.

## II. Sufficiency of the Evidence

In examining the appellants' attack on the sufficiency of the evidence, we must decide whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In doing so, we must view the evidence and the inferences that may be drawn from it in the light most favorable to the jury verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

**3.** 18 U.S.C. § 371 provides in relevant part:
Conspiracy to commit offense or to defraud United States
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency

## A. *Conspiracy*

■ Appellants contend that the government failed to prove the existence of a conspiracy between them to defraud the United States.[3] In support of this argument, they assert that the evidence proved that A.J., and A.J. alone, prepared the bid sheets, addressed the envelopes containing the bids, altered envelope "777", and caused the mailings of the bid and amended bid. In order to prove a conspiracy, it is incumbent upon the government to show an agreement by two or more persons to combine their efforts for an illegal purpose and an overt act by one in furtherance of the agreement. *United States v. Lyons*, 703 F.2d 815, 822 (5th Cir.1983); *United States v. Shaddix*, 693 F.2d 1135, 1139 (5th Cir.1982); *United States v. Reynolds*, 511 F.2d 603, 607 (5th Cir.1975). Moreover, it must be proved beyond a reasonable doubt that the defendant knew of the essential nature of the conspiracy and intended to join or associate with the objective of the conspiracy. *United States v. Montemayor*, 703 F.2d 109, 115 (5th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Pozos*, 697 F.2d 1238, 1241 (5th Cir.1983); *United States v. Jordan*, 627 F.2d 683, 686 (5th Cir.1980). It is not necessary, however, to prove that the defendant was intimately familiar with every single detail of the conspiratorial plan. *United States v. Fernandez-Roque*, 703 F.2d 808, 814–15 (5th Cir. 1983).

■ In the instant case, the record reveals no direct evidence that Edgar and A.J. knowingly or willingly joined in the scheme charged in the indictment. It is well settled, however, that a conspiratorial agreement may be established through circumstantial evidence. *United States v. Rogers*, 719 F.2d 767, 769 (5th Cir.1983). The evidence, viewed most favorably to the prosecution, showed that A.J. had a

thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

grounds maintenance contract with the United States Army at Fort Hood, Texas, and that Edgar was not only A.J.'s brother, but also worked for A.J. as the supervisor of the grass cutting job under that contract. A.J. mailed envelope "777" from Bunkie, Louisiana, to Edgar's home address in Pineville, Louisiana, on February 13, 1982. On February 16, postal carrier James delivered envelope "777" to Edgar, who signed a receipt for it. The same envelope, containing A.J.'s amended bid on the refuse disposal contract, now bearing certified mail number "778" and postmarked February 13, 1982, was delivered to the procurement office at Fort Bliss on February 25. From this evidence the jury could reasonably infer that Edgar returned, conveyed, or delivered envelope "777" to A.J. for its reuse for an illegal purpose. Contrary to the argument urged by Edgar, it was not necessary that the government prove the means by which envelope "777" was returned to A.J. Nor was it necessary to prove that Edgar actually participated in the preparation of the bids, the alteration of envelope "777", or the actual depositing of the bids into the mail stream. Proof of an overt act by one of the conspirators, in this case A.J., was all that was required. *See Lyons*, 703 F.2d at 822. Edgar also suggests that his conviction was premised solely on the fact that he and A.J. are brothers. Indeed, mere close association with a conspirator will not support an inference of participation in a conspiracy. *Id.* In this case, however, Edgar's personal contact with envelope "777" plus the appellants' close employment relationship, gives rise to the inference that Edgar was well aware of the essential nature of the scheme. Taken as a whole, the jury could have reasonably concluded that the evidence showed guilt beyond a reasonable doubt.

### B. *Mail Fraud*

■ The mail fraud statute, 18 U.S.C. § 1341, provides in pertinent part:

> Whoever, having devised ... any scheme or artifice to defraud ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

A.J. contends that there was insufficient evidence to convict him of mail fraud because the government failed to prove that he contemplated some actual harm would result to the United States from his action or that harm actually resulted from his actions. In fact, he insists that submission of the amended bid actually saved the government money. The indictment charged that the purpose of the scheme was:

> [T]o defraud the United States of and concerning its governmental functions and rights, that is, of and concerning its right to have its business and its affairs and particularly the transaction of official business of the United States, through the Procurement Division of the United States Army, Fort Bliss, Texas, conducted honestly, impartially, and with integrity as the same should be conducted, free from corruption, fraud, dishonesty, unlawful impairment and obstruction, specifically in the solicitation and acceptance of bids for the disposal of refuse at Fort Bliss, Texas.

Record Vol. 1 at 1. In *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924), the Supreme Court stated that "[i]t is not necessary that the government shall be subjected to property or pecuniary loss by the [alleged] fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation...." More recently, this Court noted that "[t]he language of the mail fraud statute is sufficiently flexible to encompass any conduct 'which fails to match the reflection of moral uprightness, of fundamental honesty, fair play and

right dealing in the general and business life of members of society.'" *United States v. Curry,* 681 F.2d 406, 410 (5th Cir.1982) (quoting *Blachly v. United States,* 380 F.2d 665, 671 (5th Cir.1967).

At trial, A.J. testified that he did not use the February 13, 1982, postmark on envelope "778" to submit his amended bid; but instead envelope "778" which contained the amended bid, was enclosed within yet another envelope bearing certified mail number "781". A photostatic copy of an alleged certified mail receipt for envelope "781" and a photostatic copy of an alleged envelope bearing number "781" were introduced into evidence by the defendant. Prosecution witnesses testified, however, that only one envelope, "778", was delivered to the Fort Bliss Procurement Office on February 25.[4] It is important to note that neither the purported original copy of envelope "781" nor the purported original copy of the certified mail receipt for envelope "781" were introduced into evidence. The jury, in making the credibility choices that are peculiarly within its province, could reasonably conclude that A.J. acted with the requisite specific intent to reuse the envelope bearing the February 13 postmark (envelope "777") in order to submit an amended bid that would guarantee the award of the refuse disposal contract to him; conduct that clearly, in this Court's view, fails to comport with the reflection of "moral uprightness" and "right dealing" in one's general and business life. *See Curry,* 681 F.2d at 410.

## III. Jury Instructions

### A. *Good Faith*

 A.J. next contends that the trial court erred by refusing to give his requested jury instruction on the defense of good faith. Good faith is a complete defense to the charge of intent to defraud under the mail fraud statute. *United States v. Goss,* 650 F.2d 1336, 1344 (5th Cir.1981). "[I]f there is any evidentiary support whatsoever for a legal defense, and the trial court's attention is specifically directed to that defense, the trial judge commits reversible error by refusing thus to charge the jury." *Id.* In refusing to give the requested instruction,[5] the trial judge noted: "I think I have that covered in the intent charge. I think it is just another way of saying intent." Record Vol. 11 at 658. In *Goss,* however, this Court stated that:

> Charging the jury that a finding of specific intent to defraud is required for conviction, while it may generally constitute the negative instruction, *i.e.,* that, if the defendants acted in good faith, they could not have had the specific intent to defraud required for conviction, does not direct the jury's attention to the defense of good faith with sufficient specificity to avoid reversible error.

650 F.2d at 1345.

The government relies upon *United States v. Wilkinson,* 460 F.2d 725 (5th Cir. 1972), for the proposition that, if a charge with respect to specific intent is given, then a jury instruction on the good faith defense is unnecessary. The government's reliance upon *Wilkinson* is misplaced. As this Court pointed out in *Goss,* the trial judge in *Wilkinson* "in fact gave an instruction incorporating the good faith defense, although he refused to couch that instruction in the language of the charge offered by

---

4. Defense acquisition regulations require that late bid envelopes be stamped as to the time and date of their delivery and that this information be recorded in the procurement office log book. A Fort Bliss Procurement Officer testified that there was no record of envelope "781" ever being logged in. Record Vol. 5 at 49–50.

5. Appellant requested the following instruction: Because the Government has the burden of proving that the defendant specifically intended to defraud the Government, good faith is a complete defense to the charges of mail fraud.

If the evidence in this case leaves you with a reasonable doubt as to whether the defendants submitted the amended bid in good faith, then you must acquit the defendants of the charges of mail fraud. Further, even if you find that the defendants' actions were somewhat suspicious, if those actions are equally consistent with innocent activity as with criminal activity, then you must find the defendants not guilty.
Record Vol. 2 at 282.

the defendant." 650 F.2d at 1345. The text of the actual charge given by the trial judge in the instant case indicates that the good faith defense was not embodied therein.[6]

Because good faith was an available defense, we must overturn A.J.'s mail fraud conviction unless, as the government urges, there was no evidentiary basis upon which appellant could rest a good faith defense. On review, the Court need only search for *any* evidence of good faith. *Curry*, 681 F.2d at 413; *see Goss*, 650 F.2d at 1345.

The substance of A.J.'s testimony at trial was as follows. Occasionally mail was delivered to A.J.'s residence in LeCompte, Louisiana, addressed to Edgar, who lives in Pineville, Louisiana. On the occasion in question, A.J. received a letter from one J.D. Henderson addressed to his brother. On February 13, 1982, he took this letter, put it in another envelope, and wrote, in pencil, Henderson's return address on the new envelope and wrote Edgar's name as addressee. He then took the envelope to the post office and had it certified number "777". At the time that he took his brother's letter to the post office, he also had an envelope containing the amended bid that he intended to mail to the procurement office at Fort Bliss, which bore the certified number "778". He later discovered that he had mailed the wrong envelope to Edgar. He then drove to Pineville and retrieved the envelope. Since "777" was a perfectly good envelope, he erased Henderson's and Edgar's addresses, readdressed the envelope to the procurement office, placed the contents of "778" inside "777", and replaced the "777" sticker with "778". He then decided that the post office probably would not accept the envelope because

it had been cancelled, and therefore put the entire envelope "778" and its contents in a new envelope bearing certified mail number "781". Therefore, from the record in this case, we cannot say that there was no evidentiary basis upon which A.J. could rest a good faith defense. While the evidence of good faith may have been "weak, inconsistent ... [and] dubious," *see Goss*, 650 F.2d at 1345, it was for the jury to decide whether, under A.J.'s theory of defense, he mailed the amended bid in good faith. He was, therefore, entitled to a good faith instruction. A defendant is entitled to an instruction specifically charging the jury on his theory of defense if that theory has both a legal and evidentiary foundation. *See United States v. Washington*, 688 F.2d 953, 958 (5th Cir.1982). We note, however, that appellant's proposed good faith instruction was overly broad, particularly the last sentence thereof. *See* n. 5 *supra.* On retrial, the court of course has discretion to modify the charge as it may deem necessary.

### B. *Other Instructions*

■ Appellants maintain that the district court erred by rejecting, in whole or in part, their numerous other proposed jury instructions. The trial judge possesses wide discretion in formulating jury instructions, and the refusal to adopt a defendant's proposal warrants reversal only where the charge, considered as a whole, does not accurately reflect the issues and the law of the case. *United States v. Harrelson*, 705 F.2d 733, 736–37 (5th Cir. 1983). Our examination of the manner in which the jury was actually charged reveals no reversible error as to these other

---

6. The actual charge, in pertinent part, reads:
 To act with intent to defraud means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self.

 \* \* \* \* \* \*

 The word knowingly, as that term has been used from time to time in these instructions, means that the act was done voluntarily and

intentionally and not because of mistake or accident.

 The word wilfully, as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

 Record Vol. 11 at 723, 726.

instructions. *See id.; United States v. Smith,* 726 F.2d 183, 186–87 (5th Cir.1984).

## IV. Evidentiary Rulings

■ We address the appellants' challenge to certain evidentiary rulings made by the trial court because these issues may arise in the context of A.J.'s new trial on charges of mail fraud.

The Fowlers assail the district court's refusal to exclude certain evidence of an extrinsic offense. *See* Fed.R.Evid. 404(b). At trial, the government was allowed to introduce evidence to the effect that A.J. and Edgar had conspired in a similar scheme in making an amended bid on a contract with the procurement office at Fort Huachuca, Arizona, in 1978. Appellants contend that the court erred in admitting this evidence because the government did not establish that they were convicted of, or at the least indicted for, the 1978 scheme. This argument is without merit. Rule 404(b) refers to extrinsic activity that reflects adversely on the defendant's character, "regardless whether that activity might give rise to criminal liability." *United States v. Beechum,* 582 F.2d 898, 902–03 n. 1, 914 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

■ Appellants also maintain that the probative value of the evidence was substantially outweighed by its prejudicial impact on the jury. In assessing the probity of extrinsic offense evidence, the trial judge must consider the overall similarity of the extrinsic and charged offenses. The similarity between the extrinsic and charged offenses in the instant case was great. Testimony concerning the extrinsic activity showed that A.J.'s amended bid on the Fort Huachuca contract arrived, after the bid opening date, in an envelope which bore erasures indicating that it had previously been addressed to Edgar. This evi-

dence was sufficiently probative so as not to be substantially outweighed by its potential for prejudice. *See United States v. Lemaire,* 712 F.2d 944 (5th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 535, 78 L.Ed.2d 716 (1983). Furthermore, the trial judge carefully instructed the jury on the limited purposes of the extrinsic offense evidence prior to its introduction. *See* Record Vol. 8 at 264–66.

We have examined the appellants' other allegations of error in the admission of certain evidence and find no abuse of the trial court's broad discretion in these matters.

## V. Newly Discovered Evidence

■ Finally, the appellants maintain that the trial court erred in denying their motion for new trial based on newly discovered evidence.[7] Such motions are disfavored by the courts and therefore are viewed with great caution. *United States v. Vergara,* 714 F.2d 21, 22 (5th Cir.1983). Thus, the district court's denial of a new trial will be reversed only where a clear abuse of discretion is demonstrated. *Id.* at 23. A defendant who challenges the trial court's denial of the motion has the burden of showing that: (1) the evidence was discovered following trial, (2) the failure to learn of the evidence was due to no lack of due diligence on the part of the defendant, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, *and* (5) the evidence is such that a new trial will probably produce an acquittal. *Id.; see Bentley v. United States,* 701 F.2d 897, 898 (11th Cir.1983); *United States v. Burns,* 668 F.2d 855, 859 (5th Cir.1982).

■ The "newly discovered" evidence in this case concerns the phantom envelope "781". Jose Arreola, a contracting officer at Fort Bliss, was subpoenaed by both the prosecution and the defense at trial. On cross-examination by defense counsel dur-

7. Appellants' motion for new trial also alleged newly discovered evidence of prosecutorial misconduct relating to Jose Arreola's trial testimony. The district court ruled that the motion, insofar as it raised any issues of prosecutorial

misconduct, was time barred by Fed.R.Crim.P. 33, due to appellants' failure to make the motion within seven days after the verdict. Appellants do not challenge this ruling on appeal.

ing the government's case-in-chief, Arreola testified that handwriting on what was purported to be a photostatic copy of envelope "781" identifying it as a "contract file copy" looked like it may have been his. Defense counsel also elicited testimony from Arreola to the effect that although he was not present at the actual opening of A.J.'s amended bid, he saw two envelopes shortly after the bid was opened.[8] •Appellants chose not to call Arreola during their case-in-chief, although he remained under subpoena. At the evidentiary hearing on appellants' motion for a new trial, Arreola testified that the handwriting was definitely his. Arreola also testified that the time date stamp on the photostatic copy of the alleged envelope "781" was from the Fort Bliss Procurement Office.

Upon utilizing the guidelines delineated above to conduct a thorough analysis of the "newly discovered" evidence in juxtaposition to the evidence adduced at trial, the district court concluded that appellants had not in fact offered newly discovered evidence. We agree. Clearly, Arreola's testimony was not evidence that could not have been discovered with due diligence at the time of trial. *See United States v. Beasley*, 582 F.2d 337, 339 (5th Cir.1978). Indeed, defense counsel conceded at the evidentiary hearing that he had several telephone conversations with Arreola prior to trial regarding his knowledge of the exist-

ence of envelope "781". Failure to satisfy one of the five prerequisites set out above requires denial of the motion for new trial. *See United States v. Riley*, 544 F.2d 237, 240 (5th Cir.1976), *cert. denied*, 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977). We further note, however, the improbability of appellants' acquittal on the basis of Arreola's change in testimony. This is especially true in light of the more credible testimony of two eyewitnesses to the opening of the amended bid that the bid arrived in only one envelope (envelope "778").

## VI. Conclusion

For the foregoing reasons, the convictions of A.J. and Edgar Fowler for conspiracy to defraud the United States are AFFIRMED and the conviction of A.J. Fowler for mail fraud is REVERSED and REMANDED.

---

**8.** Arreola's testimony was as follows:

Q. Do you recall how the—do you recall your office receiving the second bid? I know you don't remember the date, but do you remember receiving the second bid of Mr. Fowler?
A. Yes sir.
Q. Do you recall who opened it?
A. Mr. Duran opened it.
Q. Okay. Did you see him open the envelope?
A. No, I didn't, sir.
Q. Did you see the bids or the envelopes shortly after they were opened?
A. Yes, sir.
Q. Okay. Do you recall whether or not there was one or two envelopes?
A. I remember seeing two envelopes.
Q. Okay. So the bid then that contained the second bid from Mr. Fowler arrived in an envelope which itself contained another envelope, is that your recollection?

A. I just remember two envelopes, sir, I don't remember—
Record Vol. 3 at 418–19. On redirect examination, the government elicited the following testimony:

Q. Did you personally receive the amended bid envelope from Andrew J. Fowler Corporation?
A. No, sir.
Q. Therefore, you did not open that envelope, did you?
A. No, sir.
Q. Therefore, you cannot tell this jury for certain whether or not there was one envelope or two envelopes, one inside the other, in Mr. Fowler's amended bid, can you?
A. I did not open the bid so I can't, you know, tell which one was in where, sir.
Record Vol. 3 at 467.