UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Miguel LOPEZ–ESCOBAR,
Defendant–Appellant.

No. 89–8088.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1991.

Steven L. Woolard, Fort Stockton, Tex., for defendant-appellant.

Philip Police, LeRoy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Juan Miguel Lopez–Escobar appeals a conviction entered on an adverse jury verdict for importation of marijuana into the United States from Mexico (Count One, 21 U.S.C. § 952(a)) and possession of marijuana with intent to distribute (Count Two, 21 U.S.C. § 841(a)(1)). We affirm.

I.

In June 1989, United States Border Patrol agents Benjamin Poncedeleon and Onesimo Gonzalez were patrolling Texas Highway 20 about four miles east of Fort Hancock, Texas. They saw a blue Chevrolet van turn onto Highway 20 from a levee road leading from the Rio Grande. Because the driver of the van acted suspiciously, the agents directed the driver to stop his vehicle. The driver pulled to the side of the road, but made a U-turn and headed back in the direction from which he came. The agents pursued the van in their Blazer at speeds of up to seventy miles per hour. The blue van turned back onto the levee road and slowed as it approached the river. The driver jumped out of the moving vehicle and ran toward the Rio Grande. The van lumbered over a small embankment landing on its front end. Agent Poncedeleon jumped out of the Blazer and chased the driver on foot, while Agent Gonzalez secured the blue van. Poncedeleon tackled the driver, who resisted; the pair tumbled into the river, which at the time

was about sixty feet wide and six to ten inches deep. Agent Poncedeleon handcuffed and arrested the driver, who revealed that he was Juan Miguel Lopez–Escobar.

The agents testified that they saw Lopez–Escobar's face when he made a U-turn in the van and passed the agents on the highway. They maintained that they never lost sight of Lopez–Escobar from the time they first spotted the van until Lopez–Escobar's arrest. After the arrest, the agents searched the van and discovered 678 pounds of marijuana. The officers also discovered several sets of footprints on the American side of the river. All but one of the sets of footprints—the set that matched the soles of Lopez–Escobar's shoes—returned to the river.

Lopez–Escobar, on the other hand, testified that he was the victim of unusual circumstances. He said that he was waiting on the edge of the American side of the river for a man from El Paso to deliver three crates of American whiskey. Lopez–Escobar planned to smuggle the whiskey into Mexico. He remembered hearing sirens as he waited. Lopez–Escobar thought his delivery man had been apprehended so he began to walk back to Mexico. As he crossed the river, a man ran past him and out of sight. Lopez–Escobar reported that as he reached the south side of the river, an agent fired two shots into the air and ordered Lopez–Escobar to "stop." Lopez–Escobar claimed that the agents then ran across the river into Mexico and arrested him.

In contrast, Agent Poncedeleon denied firing his weapon and testified that he carried a .357 magnum pistol that day. Poncedeleon testified that he owned a nine-millimeter pistol, but denied that he had it with him that day. Agent Gonzalez confirmed that the men fired no shots, but testified that Agent Poncedeleon carried a nine-millimeter pistol on the day of the arrest. During the trial, defense counsel showed the court a nine-millimeter shell casing, which he reported finding near the scene of the arrest. Counsel argued that the casing suggested that the agents had committed perjury. The district court de-

nied defense counsel's request for a continuance to allow time for a ballistic comparison. The court, however, directed the prosecutor to arrange a comparison of the casing found near the scene of the arrest and casings to be test-fired from Poncedeleon's firearm.

After several hours of deliberation, the jury found Lopez–Escobar guilty of possession of marijuana with intent to distribute and of importation of marijuana from Mexico into the United States. The district court sentenced Lopez–Escobar to a ninety-month term of imprisonment. Lopez–Escobar filed a motion for new trial after learning that the Texas Department of Public Safety had determined that the casing found near the scene of the arrest was fired from Poncedeleon's nine-millimeter pistol. The district court denied the motion. The court concluded that the "evidence would probably not produce an acquittal."

Lopez–Escobar raises two issues on appeal: (1) whether the evidence was sufficient to support the verdict, and (2) whether the district court erred in denying his motion for a new trial. We discuss these issues in turn.

## II.

### A.

Before addressing the merits of Lopez–Escobar's arguments, we must consider whether we have jurisdiction over this appeal, and if so, the scope of our review. Lopez–Escobar filed a notice of appeal "from the order overruling Defendant's Amended Motion for New Trial." The defendant predicated his motion for new trial solely on the newly discovered nine-millimeter shell casing. Lopez–Escobar did not refer to the underlying judgment in his notice of appeal. An order denying a motion for new trial generally is not appealable; however, in cases such as this, in which the motion for new trial is based on newly discovered evidence, an order denying that motion is itself appealable. *Youmans v. Simon,* 791 F.2d 341, 349 (5th Cir.1986); *Fallen v. United States,* 249

F.2d 94 (5th Cir.1957). We therefore clearly have jurisdiction to review the order denying Lopez–Escobar's new trial motion. But, the government argues that this Court does not have jurisdiction to entertain Lopez–Escobar's challenge to the sufficiency of the evidence, which he did not raise in his motion for new trial. The government relies on Federal Rule of Appellate Procedure 3(c), which provides that a notice of appeal "shall designate the judgment appealed from." In sum, the government reasons that because Lopez–Escobar's notice of appeal only designated the order denying a new trial and failed to mention the underlying judgment of conviction, Rule 3(c) prohibits us from reviewing the sufficiency of the evidence because that issue relates to the underlying judgment.

The Supreme Court has rejected such a technical application of Rule 3(c). In *State Farm Mutual Auto Insurance Co. v. Palmer*, the defendant filed a notice of appeal from the order denying the motion for new trial. 225 F.2d 876, 877 (9th Cir. 1955), *rev'd*, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823 (1956). The court of appeals dismissed the appeal, holding that the order from which the appeal was taken could not be appealed and that the notice did not bring the judgment on the merits before the court. 225 F.2d at 877–78. The Ninth Circuit held that it was without jurisdiction because the notice of appeal did not refer to the judgment. "The Supreme Court, obviously being of the view that the notice, while imperfect, manifested an intent to appeal from the judgment, summarily reversed...." 9 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 203.18 (2d ed. 1985). Similarly in *Foman v. Davis*, the plaintiff appealed from the denial of her motions to vacate the judgment and to amend the complaint. 371 U.S. 178, 179, 83 S.Ct. 227, 228, 9 L.Ed.2d 222 (1962). The court of appeals held that because the notice of appeal only designated the denial of the motions and did not designate the underlying judgment, it could not review that judgment. *Id.* at 180–81, 83 S.Ct. at 229–30. The Supreme Court reversed stating:

[T]he Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judgment sought to be vacated. [P]etitioner's intention to seek review of both the dismissal and the denial of the motions was manifest.... It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of mere technicalities.

*Id.* at 181, 83 S.Ct. at 229.

■ We have faithfully followed these decisions. When the appellant clearly intends to appeal from the underlying judgment and the appellee will not be prejudiced, we treat an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself. *Osterberger v. Relocation Realty Serv. Corp.*, 921 F.2d 72 (5th Cir.1990) [1]; *Atlantic Coast Line R. Co. v. Mims*, 199 F.2d 582, 583 (5th Cir.1952). In *Osterberger*, the appellants filed a notice of appeal from the district court's denial of their motion for new trial. Although the notice of appeal did not refer to the underlying judgment, we stated, "It was clear ... that the [appellants] intended to appeal from the judgment, and in this situation, every Circuit, including the Fifth, has treated an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself." *Id.* at 73.

The government's reliance on *Warfield v. Fidelity & Deposit Co.*, 904 F.2d 322, 325 (5th Cir.1990), in support of its argument that Lopez–Escobar did not intend to appeal the underlying judgment is misplaced. In *Warfield*, we concluded that the appellant could not have intended to appeal issues related to a judgment that was entered after he filed his notice of appeal. *Id.* at 326. No such situation exists here.

We see no reason to read Lopez–Escobar's intent more narrowly than the Supreme Court read the appellants' intent in *State Farm* or *Foman*. As did the parties in *Foman*, both Lopez–Escobar and the government briefed and argued issues related to the underlying judgment. Lopez–

---

1. Although the clerk released *Osterberger* several days after our opinion in this case, the same panel heard both cases and decided the issues presented in each contemporaneously.

Escobar included the sufficiency issue in his statement of the issues presented for review. *See Foman,* 371 U.S. at 178, 83 S.Ct. at 227 (fact that both parties briefed merits of underlying judgment and petitioner included challenge to judgment in statement of points for review evinced intent to appeal from the underlying judgment). Also, as in *Foman,* the government does not demonstrate that it would be prejudiced if we review the underlying judgment of conviction.[2]

Finally, we conclude that our review is not limited to issues raised in the motion for new trial. *Cardoza v. Commodity Futures Trading Comm'n,* 768 F.2d 1542, 1547 (7th Cir.1985) (court had jurisdiction over an appeal from a post-trial motion and reviewed issues not raised in the post-trial motion). Once we determine that the appellant intended to appeal the underlying judgment and that the appellee will not be prejudiced, we should review all properly preserved issues arising from the final judgment. We now consider Lopez–Escobar's challenge to the sufficiency of the evidence supporting his conviction for importing marijuana into the United States from Mexico.[3]

### B.

■ The usual standard of review for a sufficiency of the evidence challenge is a familiar one: viewing the evidence in the light most favorable to the verdict, could any rational trier of fact have found each element of the crime beyond a reasonable doubt? *United States v. Ruiz,* 860 F.2d 615, 617 (5th Cir.1988). But in this case, the defendant did not renew his motion for judgment of acquittal at the close of the evidence. Consequently, this Court will review the conviction under the stricter "manifest miscarriage of justice" standard. We will affirm unless "the record is devoid of evidence pointing to guilt," or unless "the evidence on a key element of the

offense was so tenuous that a conviction would be shocking." *Id.* (citations omitted).

■ Although Lopez–Escobar's challenge would probably fail under the usual standard, it clearly fails under this more strenuous standard. He argues that the government produced no direct evidence linking him to the actual transportation of the marijuana across the Rio Grande. Yet, Lopez–Escobar need not have participated directly in the physical movement of the marijuana across the border to be convicted under 21 U.S.C. § 952(a). *United States v. Mitchell,* 777 F.2d 248, 262 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). In any event, the jury was entitled to conclude that Lopez–Escobar carried the marijuana across the border himself. Agent Poncedeleon testified that he discovered five sets of footprints about fifty yards from the scene of the arrest. The footprints led north from the Rio Grande about ten feet and returned to the river. Poncedeleon noted that one set of footprints, which matched the shoes Lopez–Escobar was wearing at the time of his arrest, did not return to the river. Moreover, the agents testified that they saw Lopez–Escobar drive the marijuana-laden van away from the Rio Grande. This evidence is more than sufficient to defeat a claim of "manifest miscarriage of justice." We now turn to Lopez–Escobar's contention that the district court should have granted him a new trial.

### C.

Agent Poncedeleon testified that he fired no shots during the arrest and further that he was not armed with his nine-millimeter pistol that day. Agent Gonzalez also reported that neither he nor Poncedeleon fired a weapon. Lopez–Escobar argues that the ballistic test demonstrates that Agent Poncedeleon fired his nine-millimeter

---

**2.** We see no reason to limit the application of *Foman v. Davis* to situations in which the appellant has mistakenly appealed an *unappealable* order denying a post-trial motion. The Supreme Court did not limit its holding to appeals from unappealable orders. Such a limitation is inconsistent with Foman's admonition to avoid

an excessively technical interpretation of Rule 3(c). 371 U.S. at 181–82, 83 S.Ct. at 229–30.

**3.** Lopez–Escobar does not make this challenge to his conviction for possession of marijuana with intent to distribute.

pistol, and therefore both agents committed perjury. The agents and Lopez–Escobar offered completely contradictory accounts of the events leading to Lopez–Escobar's arrest; thus, reasons Lopez–Escobar, any evidence that undermines the agents' version of the facts and supports his own could affect the outcome of the case. Lopez–Escobar concludes that the district court should have granted his motion for a new trial because the false testimony of the two agents likely affected the jury's verdict.

The district court did not hold a hearing on or determine whether Agents Poncedeleon and Gonzalez committed perjury. The court tacitly assumed for purpose of its analysis, however, that the agents did commit perjury. The court concluded, nevertheless, that the newly discovered evidence would probably not produce an acquittal.

■ A defendant who moves for a new trial based on newly discovered evidence must usually show:

1) That the evidence was newly discovered and was unknown to the defendants at the time of the trial;

2) That the evidence was material, not merely cumulative or impeaching;

3) That it would *probably produce* an acquittal; and

4) That failure to learn of the evidence was due to no lack of diligence on the part of defendant[ ].

*United States v. Williams,* 613 F.2d 573, 575 (5th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980) (emphasis added) (interpreting Fed.R.Crim.P. 33); *see also United States v. Snoddy,* 862 F.2d 1154, 1156 (5th Cir.1989). In his motion for a new trial, Lopez–Escobar urged the court to grant him a new trial because the newly discovered evidence "would *probably cause* a different result in the trial of this cause." The district court used this standard of materiality in its analysis.

Lopez–Escobar now argues on appeal that the district court applied the wrong materiality standard. He contends that courts employ a more relaxed standard when newly discovered evidence reveals that a prosecution witness committed per-

jury. In *United States v. Antone,* we stated, "[W]here it is shown that the Government's case included false testimony and the prosecution knew or should have known of the falsehood[,] a new trial must be held if there was *any reasonable likelihood* that the false testimony would have affected the judgment of the jury." 603 F.2d 566, 569 (5th Cir.1979) (emphasis added); *see also United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). Lopez–Escobar contends that the trial court should have applied the "reasonable likelihood" test of materiality instead of the "probably produce" test.

■ A party cannot complain on appeal of errors which he himself induced the district court to commit. *United States v. Gray,* 626 F.2d 494, 501 (5th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980); *United States v. Lewis,* 524 F.2d 991, 992 (5th Cir.1975), *cert. denied,* 425 U.S. 938, 96 S.Ct. 1673, 48 L.Ed.2d 180 (1976). Lopez–Escobar affirmatively urged the court to apply the "probably produce" standard. *See EEOC v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir.1990) (not only did appellant fail to bring proper standard to court's attention, it urged court to use wrong standard; consequently, appellate court will not reverse because error was invited). Assuming without deciding that the district court used the wrong materiality standard, it cannot be faulted for applying the legal standard urged upon it by both parties.

■ We now consider whether the district court erred in denying Lopez–Escobar's motion for a new trial under the "probably produce" standard. Rule 33 motions based on newly discovered evidence "are disfavored by the courts and therefore are viewed with great caution." *United States v. Fowler,* 735 F.2d 823, 830 (5th Cir.1984). This court will reverse a denial of a Rule 33 motion only when there is a clear abuse of discretion. *Id.* We find no abuse of discretion here.

Although the shell casings have impeachment value, this evidence relates only in a peripheral way to the facts on which the

conviction is based. "Whether this newly obtained evidence would have been helpful to the defense is not ... the standard by which we decide to grant a new trial." *Snoddy*, 862 F.2d at 1156. The jury may have disbelieved the agent's testimony about the firing of weapons but still have convicted Lopez–Escobar.

The government presented a persuasive case against Lopez–Escobar. The two agents saw Lopez–Escobar's face as he drove the blue van past them on the highway. The agents never lost sight of the blue van Lopez–Escobar was driving from the time they first spotted it until they arrested him. Not only is the government's case strong, Lopez–Escobar's account is implausible. Lopez–Escobar testified that he had been standing for an hour or more on the edge of the American side of the river waiting for his whiskey shipment. Yet, he did not see anyone load the blue van with marijuana or drive it up the levee road to the highway.

The district court did not abuse its discretion in concluding that the newly obtained evidence would probably not have produced a different result.

AFFIRMED.