**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Lee FESLER, Jr. and Deborah Ruth Fesler, Defendants-Appellants.**

**No. 85–1227.**

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1986.

Rehearing and Rehearing En Banc Denied Feb. 20, 1986.

W.V. Dunnam, Jr., Waco, Tex., for defendants-appellants.

Helen M. Eversberg, U.S. Atty., and Michael Hardy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, RUBIN and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In 1982, Laurie Fesler, the infant daughter of the appellants, died from scalding. Her two and one-half year old brother, Carl, was beaten in the face. Their parents, appellants Richard and Deborah Fesler were convicted for these acts, committed in violation of 18 U.S.C. § 1112 (involuntary manslaughter) and the Texas Penal Code Ann. § 22.04 (Texas child abuse statute) (Vernon Supp.1985), made applicable in this case through 18 U.S.C. § 13 (the Assimilative Crimes Act) (ACA), because the crime was committed at Fort Hood, Texas, a federal enclave.[1] On appeal, the Feslers raise twenty-five objections to their convictions and sentencing, most of which we reject as meritless. However, because we find that the district court erred in instructing the jury on the involuntary manslaughter count, we vacate the Feslers' convictions on count two and remand for further proceedings on that count.

## I

### A.

Many of the facts in this case were in sharp dispute at trial. Since, however, the jury returned guilty verdicts, we are required to review the evidence in the light most favorable to the prosecution. *See United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Applying this standard, we find that the following facts were adduced at trial.

Richard Fesler and his wife Deborah, the appellants, are the parents of Laurie (aged ten months at her death), and Carl (two-and-a-half at the time of Laurie's death). The family lived at Fort Hood, Texas, where Richard was a sergeant in the Army. The evidence showed that in the fall of 1982, Deborah Fesler told her neighbor Vicky Smith that she had been having prob-

---

1. The Assimilative Crimes Act provides that a person who is guilty of an act or omission, not punishable by any enactment of Congress, committed within the special maritime or territorial jurisdiction of the United States (i.e. a federal enclave), that would be punishable if committed within the jurisdiction of the state, territory, possession or district in which the federal enclave is located, is subject to federal prosecution under the state law.

lems disciplining Carl. On October 12, Smith noticed "awful looking" marks on the boy. Following a child abuse referral from the Department of Human Resources (DHR), a social worker examined Carl, saw bruises on his legs, and photographed them. Deborah told the social worker that the bruises could have come from a spanking since both parents used a dog leash when punishing Carl. Deborah also spoke of her husband's short temper. In November, the Feslers completed DHR-required professional counseling sessions on how to properly discipline their children.

On December 21, Richard Fesler took Laurie to the emergency room of Fort Hood's Darnall Army Community Hospital. Second-degree burns covered approximately forty percent of the infant's body. Laurie was treated by Dr. David Strauss, a senior resident, who was Board-certified in emergency cases. The characteristics and distribution of Laurie's burns and the history supplied by Richard Fesler prompted Dr. Strauss immediately to suspect that Laurie's injuries were the result of a classic type of child abuse. Laurie's injuries were so serious that she was evacuated by helicopter the same day to the burn treatment facility at Brooke Army Medical Center at Ft. Sam Houston. Laurie died as a result of her injuries sixteen days later. Dr. Linda Norton, a Board-certified pathologist and expert in child abuse, performed the autopsy and concurred with Dr. Strauss' diagnosis of child abuse. The autopsy report stated that Laurie died of burns "sustained when she was deliberately dipped in scalding water."

The evidence showed that on the day of the scalding, before leaving the hospital to be with her seriously injured daughter, Deborah let out the water from the bathtub and straightened up the bathroom. She asked neighbor Louis Oglesby to babysit with Carl, but Oglesby refused and insisted instead on taking the boy to the emergency room for treatment because Carl's face was puffy and because he had red marks on his neck, cheek, and forehead. To Oglesby, Carl looked as if he had been held by the neck and scratched with fingernails. Deborah told Oglesby that "Richard got mad" at Carl. She further said that her husband had asked Carl whether he turned on the hot water, and, when Carl answered "Yes," Richard hit the boy two or three times in the face with his closed fist before she intervened to stop the beating. Deborah, appearing calm, told Oglesby that she did not want Carl to be seen at the hospital because a social worker might investigate his bruises. Once at the hospital, Deborah asked the doctor no questions about Laurie's condition, treatment, or prognosis, inquiring only if her husband was flying to San Antonio with Laurie and, if so, whether he would be returning by helicopter the same day. Deborah told the social worker that she did not want to see Laurie before the infant was flown to San Antonio.

Dr. Strauss testified that Richard Fesler was not only calm but that he laughed inappropriately during their interview. Richard did not seem upset to the social worker either. Rather, he appeared less interested in his daughter's condition than in getting candy bars for a warrant officer who was in the emergency room. Richard did not remain long with his critically injured daughter.

Dr. Strauss further testified at trial that, in his opinion, the characteristics and distribution of Laurie's burns indicated child abuse. Dr. Norton, who performed Laurie's autopsy, agreed with Dr. Strauss. Dr. Norton testified at trial that in her opinion, Laurie died as a result of being deliberately dipped in scalding water.

The evidence showed that Richard later explained to Dr. Strauss, the social worker, and his commander that he had knocked Carl aside and out of the bathtub as he was snatching Laurie from the hot water. The morning after the scalding, Richard reported to his commander that he was watching television in the bedroom when he heard the water suddenly come on; the Feslers, however, had no television in their home at that time. According to Fesler's commanding officer, Fesler further told him that he

ran into the bathroom when Laurie screamed, and that he saw his daughter standing with hot water streaming down her. Fesler also suggested that he had assisted his wife in dousing Laurie with cold water and in wrapping the child in towels.

At trial, Fesler testified that he was reading the Farmer's Almanac when the scalding occurred, but that he recalled little or nothing from the time he went into the bathroom until he spoke with the warrant officer at the hospital. Nevertheless, he remembered walking into the bathroom, seeing his daughter under the faucet, asking Carl if he had turned on the hot water, and hearing Carl's affirmative reply. He said he had no recollection of whether he had hit his son.

Deborah testified that she had been giving Laurie and Carl a bath when she stepped out of the bathroom to speak with Richard in the bedroom. According to her, Laurie cried after Deborah had been out of the bathroom for just a moment and that when she reentered the bathroom, Laurie was under the faucet with water streaming down her body. Deborah steadfastly maintained that she picked Laurie up from the hot water and that her husband thereafter repeatedly hit Carl in the face.

### B.

Richard and Deborah Fesler were indicted on October 19, 1984, charged with conspiracy to assault, maim, and/or murder their children, Laurie and Carl, in violation of 18 U.S.C. §§ 371, 113, 114, 1111 (count one), and the murder of Laurie in violation of 18 U.S.C. §§ 1111, 2 (count two). A superseding indictment added the charges of causing serious bodily injury to Laurie (count three) and bodily injury to Carl (count four), in violation of both 18 U.S.C. § 13 (the Assimilative Crimes Act (ACA), and Tex.Penal Code Ann. § 22.04 (Texas child abuse statute) (Vernon Supp.1985).[2]

The district court granted the Feslers' motions for judgment of acquittal on counts one (conspiracy) and two (murder) except for the lesser-included offense of involuntary manslaughter on count two. The jury found the Feslers guilty of involuntary manslaughter (counts two), recklessly causing serious bodily injury to Laurie (count three), and recklessly causing bodily injury to Carl (count four). Both parents received a ten-year sentence on count three (abuse of Laurie), a concurrent three-year prison term on count two (manslaughter), and five years supervised probation on count four (abuse of Carl). As a special condition of probation, the Feslers were required to undergo therapy for child abuse. The Feslers filed timely notices of appeal, challenging only their convictions on counts two and three.

### II

On appeal, Richard Fesler has raised twenty-five objections to his conviction and Deborah Fesler has raised twenty-four of the same twenty-five objections. Almost half of these issues are meritless and are summarily dismissed.[3] The remaining is-

---

**2.** Texas Penal Code section 22.04 provides:
(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger or to an individual who is 65 years of age or older:
(1) serious bodily injury;
(2) serious physical or mental deficiency or impairment;
(3) disfigurement or deformity;
(4) bodily injury.
(b) An offense under Subsection (a)(1), (2), or (3) of this section is a felony of the first degree when the conduct is committed in intentionally or knowingly. When the conduct

is engaged in recklessly it shall be a felony of the third degree.

**3.** The Feslers contend that the district court erred in admitting the following into evidence: Laura's autopsy report; previous out of court statements by the Feslers' pastor who stated that he thought the bruising and scalding of the Fesler children was the result of neglect; testimony showing that Carl had previously been taken from his parents; testimony that Carl would not look at his parents after Laurie's death and colored out the eyes and scratched out the hands of characters in a coloring book; and opinion testimony of a social worker that the Feslers explanation of the scalding was in-

sues can be grouped into six distinct categories. First, Richard Fesler contends that the record contains no evidence that he knew that Laurie was in the bathtub or that he aided or encouraged his wife in leaving his daughter in the bathtub. Second, the Feslers contend that they cannot be tried, convicted, and sentenced under both federal law and state law on the same acts through application of the ACA. Next, the Feslers contend that the indictment was unconstitutionally vague and hence invalid. Fourth, the Feslers contend that the district court committed reversible error by beginning trial before thirty days had elapsed from the return of the superseding indictment in violation of the Speedy Trial Act. Fifth, the Feslers contend that the district court improperly instructed the jury on the federal involuntary manslaughter count. Finally, the Feslers contend that their ten-year sentence on the charge of causing serious bodily injury to Laurie violates the cruel and unusual clause of the eighth amendment.

### III

### A.

Richard Fesler challenges his conviction on counts two and three,[4] contending that the record contains no evidence that he knew that Laurie was in the bathtub or that he aided or encouraged his wife in leaving his daughter in the bathtub. In addition, Richard Fesler argues that because the district court found that there was insufficient evidence to establish a conspiracy between Richard and Deborah, and granted a judgment of acquittal on that count, the court was collaterally estopped from instructing the jury on the law of aiding and abetting, with respect to the remaining counts charging the substantive offenses.

■ We disagree with each of these contentions. Richard's contention seems to be that because he did not admit to Laurie's scalding and because the government adduced no eyewitness to the act, there is no evidence to connect him with the act of scalding. This argument ignores the circumstantial evidence which was sufficient for the jury to draw the inference that Richard was guilty as charged in counts two and three. The jury was presented testimony that the day after Laurie died, Richard admitted to a neighbor that he had helped place Laurie in the tub. The evi-

consistent with the facts. The Feslers' also contend that the district court committed reversible error by excluding Deborah Fesler's proposed testimony that Richard was of unsound mind at the time that he slapped Carl, that she was a conscientious objector, and that she gave away Laurie's crib for charitable reasons. Finally, the Feslers contend that the district court erred in not striking from the record the prosecutor's objection to the defense counsel's repeated recalling of witnesses; limiting closing arguments to 22.5 minutes for each defendant (45 minutes total); instructing the jury that it was permissible to draw inferences against either the government or the Feslers for failure to call potential witnesses; and failing to instruct the jury on the Fesler's "alibi" defense.

Each of these contentions lack any merit. A district court has broad discretion over the admissibility of evidence and may only be reversed for an abuse of that discretion. *Petty v. Ideco*, 761 F.2d 1146, 1150–51 (5th Cir.1985). We find that the district court did not abuse its discretion in its rulings on these matters. Using the same standard of review, we find no error in the district court's refusal to strike the prosecutor's statements from the record, especially

since the district court repeatedly instructed the jury that the statements of counsel were not to be considered as evidence. Similarly, the length of time afforded counsel for closing arguments is left to the discretion of the district court. *United States v. Bernes*, 602 F.2d 716, 722 (5th Cir.1979). In this case, 45 minutes for the defense was not an abuse of discretion. Finally, a district court's instructions to a jury may only be reversed when the instructions inaccurately reflect the issues and the law pertaining to the case. *United States v. Schmitt*, 748 F.2d 249, 253 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985). In this case, the court's statement that the jury was allowed to draw adverse inferences against either party was not only not prejudicial, it was correct. In addition, the court instructed the jury to consider the Feslers' affirmative defense, which is identical to the Feslers' request that the jury be instructed as to the Feslers' alibi. Thus, we find no reversible error in any of these contentions.

**4.** As we have earlier indicated, Richard and Deborah Fesler do not appeal their convictions on count 4, the child abuse of their son Carl.

dence also showed that Richard told conflicting stories to others as to what he was doing when Laurie was scalded. Moreover, Richard and Deborah materially contradicted each other in their explanations of the event. Finally, in contrast to the Feslers' explanations, Dr. Norton testified that based on her observations of the burn marks on the body, Laurie had deliberately been dipped. The jury was fully entitled to discredit Richard's story. Furthermore, in assessing the evidence, the jury was entitled to take into account evidence showing Richard's short temper and Richard's complete lack of concern over Laurie's condition. The pattern of child abuse in the Fesler home was competent evidence under Federal Rule of Evidence 404(b), showing intent and the absence of accident in the Fesler home.

Richard's argument that the evidence was insufficient to convict him tends to ignore that the indictment charges him with aiding and abetting in the scalding of Laurie. The evidence, therefore, need not show that it was Richard who committed the actual act of scalding so long as the evidence supports that he aided and abetted Deborah in the acts charged. The evidence was sufficient for the jury to draw this inference beyond a reasonable doubt.

▆▆▆ Finally, Richard's assertion that the trial court's acquittal on the conspiracy count collaterally estops a conviction for aiding and abetting misapplies the doctrine of collateral estoppel. Collateral estoppel does not apply to the inconsistency of a verdict returned in a single trial. Rather, the doctrine applies in situations where the verdict of one jury precludes a subsequent jury from returning a verdict inconsistent with the earlier verdict. *United States v. Caucci*, 635 F.2d 441, 448 (5th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981). In addition, Richard's argument necessarily assumes that conspiracy and aiding and abetting are the same and that it is inconsistent to acquit on conspiracy while allowing a conviction on aiding and abetting. This assumption is erroneous. Conspiracy and aiding and abetting are entirely separate crimes so that acquittal on one does not implicate the remaining charge. *United States v. Swaim*, 757 F.2d 1530, 1536 (5th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985). Thus, we find that the court was not, by the lack of evidence of conspiracy and the judgment of acquittal granted thereon by the court, collaterally estopped from charging the jury on the law of aiding and abetting.

### B.

With respect to their daughter Laurie, the Feslers were convicted and sentenced under both 18 U.S.C. 1112 (involuntary manslaughter) of the federal criminal code and section 22.04 of the Texas Penal Code (Texas child abuse statute) which was held to be applicable by reason of the ACA, 18 U.S.C. 13. The Feslers contend that both the express language of the ACA and subsequent case law indicate that any act or omission that is punishable by an enactment of Congress cannot be punished under the ACA. The Feslers argue that the federal offense of involuntary manslaughter plainly demonstrates that the acts with which they were charged were punishable by a federal statute, precluding application of the ACA. For this reason, the Feslers argue that no judgment or sentence should be imposed against the appellants for violations of state law.

▆▆▆ Again, we disagree. The ACA is designed to fill the gaps in federal criminal law by ensuring that the law governing federal enclaves conforms with the law of the state in which those enclaves are located. *United States v. Prejean*, 494 F.2d 495, 496 (5th Cir.1974). While the Feslers correctly contend that the ACA only permits federal prosecution for those acts which are not already made penal by an act of Congress, this court has held that the "precise act" made penal under federal law must be penal under state law before prosecution under the ACA is barred. *United States v. Brown*, 608 F.2d 551, 554 (5th Cir.1979).

■ Here the criminal acts charged are distinct. The Texas penal code states that the victim must be under 14 years old or under before all the elements of child abuse are satisfied. *Lang v. State*, 586 S.W.2d 532, 533 (Tex.Crim.App.1979). There is no such requirement in the federal offense charged in this case. Moreover, death of a human being, essential to a federal involuntary manslaughter conviction, is not required in the state offense. 18 U.S.C. § 1112(b). It is important that the state statute seeks to punish a particular offense at which the federal statute is not aimed, child abuse. Here, the evidence, viewed most favorably to the government, as it must be, showed that the Feslers committed two separate offenses: first, the scalding of Laurie was a clear violation of the Texas statute, but not of the federal statute; second, only when Laurie died had the federal offense of manslaughter been committed. The statutes punish two separate acts: maiming of a child, and second, the death of a human being. Because Congress has not covered the precise acts of child abuse covered by Texas state law, the ACA was properly invoked and applied.

### C.

The Feslers' third contention on appeal is that the indictment on count three of the superseding indictment was invalid for several reasons.[5] First, count three of the superseding indictment charges that the Feslers, by act or omission, intentionally engaged in conduct that caused serious bodily injury to their child, but does not specify what that act or omission was. The Feslers contend that this failure renders the indictment violative of the fifth and sixth amendments because it failed to provide the Feslers with sufficient notice of the charge. Second, the Feslers contend that count three violates the Feslers' right

to be tried solely upon presentment of a grand jury because the charge alleges that the Feslers' acts or omissions caused harm to Laurie but failed to allege what duty of care, if any, was owed by the Feslers to their daughter Laurie. Thus, the Feslers argue that the charge fails to allege an offense under the Texas penal code so that the indictment and conviction are void. *Ronk v. State*, 544 S.W.2d 123, 125 (Tex. Crim.App.1976). Finally, the Feslers argue that since the indictment charges "act or omission" in the disjunctive, the government must allege (1) an act, and (2) an omission. This argument, in effect, contends that because the indictment is written in the disjunctive, it means that the factual allegations must be alleged in the conjunctive. While we really do not understand this argument well enough to explicate it any more, we understand enough to know that it is frivolous and need not consider it any further.

■ "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Under federal law, an indictment tracking statutory language need not allege the means of committing the offense. *United States v. Bearden*, 423 F.2d 805, 810–11 (5th Cir.), *cert. denied*, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970). Thus, the indictments in this case, which tracked the language of the statute, specified dates and places, and charged the elements of the offense, were sufficient, even though they did not specify the act or omission that caused the injury to Laurie. Furthermore, the Feslers were aware that the charge against them in

---

5. Count three of the indictment reads:
   That on or about December 21, 1982, at Fort Hood, Texas, within the special maritime and territorial jurisdiction of the United States and in the Western District of Texas, Defendants RICHARD LEE FESLER, JR. AND DEBORAH RUTH FESLER intentionally and

knowingly, by act or omission, did engage in conduct that caused serious bodily injury to a child who was younger than 14 years of age, to wit, Laurie Fesler, in violation of Title 18, United States Code, Sections 13 and 2 and Section 22.04 of the Texas Penal Code.

count three was that they were criminally responsible for Laurie's scalding under the Texas child abuse statute. This conclusion is substantiated by the Feslers' failure to request a bill of particulars clarifying or explaining the charges in the indictments. Since the indictments specified the date and place of the offense, adequately tracked the statutory language, alleged the elements of the statute and since the Feslers were made fully aware of the charges in this case, they had an adequate opportunity to prepare and present their defense and are protected from double jeopardy. Thus, the indictments were sufficient.

■■■ With respect to the contention that the indictment is not sufficient under Texas law, the Feslers misapprehend the applicable standard to be applied. Federal law, not state law, determines the sufficiency of an indictment under the ACA. *United States v. Webb*, 747 F.2d 278, 284 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). As we have discussed, the indictments in this case satisfy the applicable federal standard.

### D.

The Feslers contend that the district court violated the Speedy Trial Act and thus committed reversible error by beginning trial on the charges in the superseding indictment before thirty days had elapsed.[6] The Feslers were indicted in the superseding indictment on counts three and four on January 8, 1985. Trial was held on all four counts on January 29, 1985. The Feslers did not provide a written waiver of their statutory right to thirty days between the superseding indictment and trial.

The Supreme Court has held that the thirty-day period begins as of the date of the defendant's first appearance through counsel, not at the date of either the indictment or the superseding indictment. In *United States v. Rojas-Contreras*, —— U.S. ——, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985)

a federal grand jury returned a two-count indictment against the respondent on February 18, 1983. The indictment misstated the date of the respondent's previous arrest. Nonetheless, the respondent was arraigned on this indictment on February 18 and trial was set for April 19, 1985. On April 15, 1983 a grand jury returned a superseding indictment that was identical with the February 18th indictment except that the date of the respondent's previous arrest was corrected. The respondent was arraigned on the superseding indictment on April 18, 1983. Counsel for the respondent moved the district court for an additional thirty days to prepare for trial, contending that § 3161(c)(2) authorized the additional time. The district court denied the motion and the Ninth Circuit reversed. The Supreme Court reversed the Ninth Circuit, stating that "Congress did not intend that the 30-day trial preparation period begin to run from the date of filing of a superseding indictment." *Id.*

■■■ Applying this holding to the instant case, we find that the Speedy Trial Act was not violated. The Feslers were first indicted on October 19, 1984, and first appeared in court on about that date, affording them more than thirty days to prepare their defense. As the Supreme Court has held, the date of the superseding indictment is not determinative of whether the Speedy Trial Act was violated. Thus, we find the Feslers' contention that the Speedy Trial Act was violated meritless.

### E.

The Feslers next contend that the district court improperly instructed the jury on the federal involuntary manslaughter count because the court did not instruct the jury on the meaning of "due caution and circumspection." The entirety of the district court's instruction to the jury on this count was

6. The Speedy Trial Act of 1974, as amended in 1979, 18 U.S.C. § 3161(c)(2) provides:
   Unless the defendant consents in writing to the contrary, the trial shall not commence less

than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed *pro se*.

"Manslaughter" is the unlawful killing of a human without malice.... In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death.

Therefore, you may find a Defendant guilty under Count Two only if you find beyond a reasonable doubt that he or she committed a lawful act without due caution or circumspection which produced the death of Laurie Fesler. If you do not so find, or if you have reasonable doubt thereof, you must acquit the Defendant of involuntary manslaughter and say by your verdict "Not Guilty."

The Feslers argue, "due care" means ordinary negligence and a *mens rea* of "gross negligence" is a necessary element in a federal involuntary manslaughter charge and that the court committed reversible error in not granting the Feslers' requested jury charge on this count.

■ "In reviewing the refusal of the district court to give a requested jury charge, we must examine the manner in which the jury was actually charged." *United States v. Smith*, 726 F.2d 183, 186 (5th Cir.1984). An appellate court should reverse a district court for failing to adopt a defendant's proposed jury charge "only where the charge, considered as a whole, does not accurately reflect the issues and the law of the case." *United States v. Fowler*, 735 F.2d 823, 829 (5th Cir.1984). A proper instruction on an involuntary manslaughter charge requires the jury to find that the defendant (1) act with gross negligence, meaning a wanton or reckless disregard for human life, and (2) have knowledge that his or her conduct was a threat to the life of another or knowledge of such circumstances as could reasonably have en-

abled the defendant to foresee the peril to which his or her act might subject another. *United States v. Tresvant*, 677 F.2d 1018, 1023 (4th Cir.1982); *United States v. Schmidt*, 626 F.2d 616, 617 (8th Cir.), *cert. denied*, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980).[7]

■ In this case, the court's failure to instruct the jury on the meaning of the statutory term "due caution and circumspection" allowed the Feslers to be convicted upon a lesser showing of *mens rea* than the law permits in an involuntary manslaughter case. The government contends that the court twice instructed the jury on the law of recklessness and that these instructions remedied whatever error may have occurred. It is true that the jury was instructed on the law of recklessness, but this instruction was limited to counts three and four. The only instruction that the court gave with respect to the manslaughter was the instruction we quoted above. In fact, the court carefully separated its instructions into the different counts so that the jury would know which instruction pertained to which count. Thus, the jury was never told that in order to find the Feslers guilty of involuntary manslaughter, the jury would have to find that the Feslers acted recklessly. The court's instruction on count two constituted prejudicial error and the conviction on count two must be vacated.

### F.

■ Finally, the Feslers challenge their ten-year sentence on count three as violating the cruel and unusual clause of the eighth amendment. The Feslers' argument seems to be that the court and the jury absolved the Feslers of intentionally injuring their children.[8] The federal manslaughter statute provides a maximum of three years for such unintentional acts.

---

**7.** *See also United States v. Keith*, 605 F.2d 462, 463 (9th Cir.1979), where the Ninth Circuit held an indictment for involuntary manslaughter to be invalid because it failed to charge the defendant with gross negligence, even though the indictment tracked the statutory language and charged the defendant with acting without "due care and circumspection."

**8.** The court granted the Feslers' motion for acquittal on the murder count, except for the lesser included offense of involuntary manslaughter. On count three of causing serious bodily injury to Laurie, the court allowed the jury to find the Feslers guilty of causing such injury "intentionally or knowingly," "recklessly," or through "criminal negligence." The jury found the Feslers guilty of recklessly causing

Consequently, the court was somehow limited to the same three year maximum when imposing the sentence under count three, notwithstanding that the maximum sentence under the ACA-incorporated state statute was ten years.

This convoluted argument is frivolous. The Texas statute under which the Feslers were convicted clearly provides for a maximum term of ten years. The standards for challenging a sentence imposed by a district court are both clear and stringent. A sentence imposed within the statutory limits is generally not subject to appellate review, *United States v. Tooker*, 747 F.2d 975, 978 (5th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985), and that certainly is the case here.

### IV

We summarize our holding today. The Feslers' convictions and sentences on count two are vacated and that part of the case is remanded to the district court for further action; we affirm the Feslers' convictions and sentences imposed on count three.

AFFIRMED IN PART, VACATED IN PART and REMANDED.

serious bodily injury to Laurie. Thus, the jury acquitted the Feslers of "intentionally or knowingly" causing serious bodily injury to a child but nonetheless, in finding recklessness, found the Feslers guilty of a felony of the third degree.