UNITED STATES of America

v.

James M. LEWIS, Debra Faye Lewis.

No. CR 94–20001–01/02.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

April 6, 1994.

Frank Granger, Lake Charles, LA, for defendant No. 1.

Homer C. Singleton, Jr., Lake Charles, LA, for defendant No. 2.

Larry Regan, Asst. U.S. Atty., Lafayette, LA.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court are the defendants' motions to dismiss the indictment based upon the government's charging the defendants with a violation of state law under the Assimilative Crimes Act ("ACA"), instead of under 18 U.S.C. § 1111.

The ACA, 18 U.S.C. § 13, states (in pertinent part) that:

"(a) Whoever within or upon any of the places now existing or hereinafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to like punishment."

In the instant case, the defendants, Debra and James Lewis, are charged with the first degree murder of their four year old child on Fort Polk Military Installation. The first degree charge stems from the use of LSA 14:30(A)(5) through the ACA. R.S. 14:30(A)(5) states (in pertinent part) that:

"(A) First degree murder is the killing of a human being:

(5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve . . . . . ."

18 U.S.C. § 1111 states (in pertinent part) that murder is the killing of another human being with malice aforethought. Certain specifically enumerated aggravating factors constitute first degree murder; any other murder under this statute is murder in the second degree.

Because the state statute specifically refers to victims under twelve years of age, yet

there is a federal statute that encompasses all murders, the defense argues that use of the ACA is not warranted and that the government is bound to proceed by charging the defendants with first degree murder under 18 U.S.C. 1111.

The Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13, makes punishable the doing of acts on federal reservations which, "although not made punishable by Congress, would be punishable if committed or omitted" within the jurisdiction of the state in which the reservation is situated. Upon conviction of a violation under such an assimilated state law, the offender shall be subject to the punishment prescribed by the state. Read literally, any set of circumstances which constitutes a crime under state law, but not under federal law, could still be punished under state law in federal court through the ACA. The Supreme Court decision in *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946), and its progeny, indicated that this simplistic reading is not correct as will be discussed in more detail hereinafter.

The defendant in *Williams*, supra, was convicted of having carnal knowledge of an unmarried female over the age of 16 but under the age of 18 on a federal reservation in Arizona, in violation of Arizona law. It was not rape or assault with intent to rape under federal law because the required element of force was absent and the victim was over 16.

The Supreme Court held that Arizona law was not applicable under the ACA and that the defendant could not be punished thereunder for the following reasons:

"We hold that the Assimilative Crimes Act does not make the Arizona statute applicable in the present case because (1) the precise acts upon which the conviction depends have been made penal by the laws of Congress defining adultery and (2) the offense known to Arizona as that of "statutory rape" has been defined and prohibited by the Federal Criminal Code, and is not to be redefined and enlarged by application to it of the Assimilative Crimes Act.

The fact that the definition of this offense as enacted by Congress results in a narrower scope of the offense than that given to it by the State, does not mean that the Congressional definition must give way to the State definition. This is especially clear in the present case because the specified acts which would come within the additional scope given to the offense by the State through its postponement of the age of consent of the victim from 16 to 18 years of age, are completely covered by the federal crimes of adultery or fornication. (Footnotes eliminated)."

327 U.S. at 717-18, 66 S.Ct. at 781-782.

The Supreme Court ruled that the ACA should be interpreted as not allowing federal prosecution for state law violations where the exact act (intercourse, or intercourse with a minor) was already a criminal offense under federal law and only the definition or boundary definition or boundary condition differed in the state law. *Id.* at 717, 66 S.Ct. at 781. The Court emphasized that Congress had already considered the question of the proper age of consent for the federal crime of statutory rape, and had determined that it should be sixteen, as was reflected in the pertinent statute. *Id.*, 724–25, 66 S.Ct. at 784–85. The Court then reasoned that it would be using the state law to expand rather than to supplement the federal law to allow prosecution under a state law which more broadly defined and penalized the same offense. *Id.*, at 717, 66 S.Ct. at 781.

The defendant in *U.S. v. Eades*, 615 F.2d 617 (4th Cir.1980), who was charged with a variety of offenses, moved for dismissal of two counts based upon improper use of the ACA. The district court denied the motion and the defendant appealed.[1] The Fourth Circuit reversed the District Court and held that by enacting the comprehensive federal assault statute, Congress preempted the Maryland statute defining the crime of third degree sexual offense and that the ACA did not make the Maryland third degree sexual offense statute applicable to acts committed on a federal reservation. The Government

---

**1.** This appeal was consolidated with an appeal from a judgment convicting Larry F. Wilson of assault with intent to commit rape in violation of

federal law and in violation of third degree sexual offense in violation of Maryland law.

moved for a rehearing *en banc,* which was granted. *U.S. v. Eades,* 633 F.2d 1075 (4th Cir.1980), cert. den. 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Upon rehearing, the *en banc* court reversed the prior panel and held that the defendant's conviction for third degree sexual offense under the ACA was not proscribed by the federal statute, 18 U.S.C. § 113. The key factor that the court relied upon in reaching this conclusion was congressional intent. After examining federal law, the court found that Congress has considered sexual offenses in 18 U.S.C. § 2032 and 18 U.S.C. § 2031, but that § 113 dealt entirely with assaults.[2] The court reasoned that Congress did not intend to deal with sexual offenses in § 113, therefore the state statute could be assimilated because there was no relevant federal statute proscribing the specific conduct in which the defendant was engaged.

The Maryland statute under which both defendants in *Eades* were convicted proscribed as a "third degree sexual offense" sexual contact by one against the will and without the consent of another where the accused threatens or places the victim in fear of, *inter alia,* death, serious injury or kidnapping. Art. 27, § 461, Ann.Code of Md. (1976 Repl.Vol. and 1978 Cum.Supp.) defined "sexual contact" to include the intentional touching of the anal or genital area for the purposes of sexual arousal or gratification. The explicit elements of the offense of a "third degree sexual offense" as defined in the Maryland statute were not included verbatim in the federal assault statute. The government asserted that, because the federal statute did not proscribe the precise conduct proscribed by the state statute, the state law was applicable. The Court of Appeal in the *en banc* hearing agreed.

As in *Williams* and *Eades,* it could be argued that the federal statute in the case at bar, 18 U.S.C. § 1111 (murder of a human being), makes the "precise acts" upon which the conviction depends penal by the laws of Congress, the "precise act" arguably being the taking of another's life. It could also be argued that although the government concedes that the "precise act" of murder is congressionally proscribed in 18 U.S.C. § 1111, the federal statute does not address the compelling state interest in the protection of children under the age of twelve. The Government asserts that Congress has not addressed the wide-spread and pervasive amount of child abuse which results in serious injury or death to children under the age of twelve and the state statute addresses this issue in LSA R.S. 14:30(A)(5), with which the defendants in this case are charged.

The seriousness and compelling state interests involved in providing adequate criminal sanctions for child abuse notwithstanding, it appears at first glance that the facts of the case at bar are strikingly similar to the facts in *Williams.* The specific acts which would come within the additional scope given to the state offense by the State incorporating the element of murdering a child under the age of twelve is covered by the federal crime of murder, even though no victim age is delineated. The Louisiana statute merely incorporates a special form of murder ... the murder of a child under the age of twelve. One cannot violate R.S. 14:30(A)(5) without violating some form of 18 U.S.C. § 1111. Yet, a further review of case law, including but not limited to the Fifth Circuit, brings this court to a different conclusion.

In *U.S. v. Bowers,* 660 F.2d 527 (5th Cir. 1981), a case of child abuse which resulted in the death of a two and a half year old, the applicable Georgia statute was applied through the Assimilative Crimes Act, although the court did not discuss the arguments which are now before the court. The Fifth Circuit affirmed the use of the ACA even though the issue of federal preemption was not discussed by the court at that time.

The case of *U.S. v. Brown,* 608 F.2d 551 (5th Cir.1979), also involved injury to a child. The defendant in this case was charged under the ACA with having recklessly or with criminal negligence engaged in conduct causing serious injury to a child. The Fifth Circuit in this case held that although the

---

2. In § 113 there is only one reference to sexual assault in that assault with the intent to commit murder or rape is prohibited by § 113(a).

acts with which the defendant was charged could have been punished under the federal assault statute, the Government properly proceeded under the state child abuse statute under the ACA, as the "precise act" of injury to a child was not proscribed by federal law and the state statute was designed to punish specific conduct of a different character than that forbidden by the state statute.

The appellant in *Brown* relied on *Williams* and on *U.S. v. Butler*, 541 F.2d 730 (8th Cir.1976), to argue that the prosecution under the state child abuse statute must be barred because the conduct charged is punishable under the federal criminal assault provisions of 18 U.S.C. § 113. The Fifth Circuit held, however, that neither *Williams* nor *Butler* supported this contention because both of these cases dealt with attempts to enlarge the scope of a congressionally defined penal offense by the application of a "conflicting state definition" under the ACA.

In *Williams*, the Fifth Circuit reasoned that the federal law required a victim under the age of 16, whereas the state law allowed for a victim under 18. The defendant in *Williams* could not have been prosecuted under the federal law. The Supreme Court, then, set aside the conviction as an improper use of the ACA to expand a federal statute.

The defendant in *Butler* successfully overturned his state law conviction using the same reasoning as *Williams*. Although both the federal and state law proscribed the possession of a firearm by a felon, only the federal statute required interstate travel. The government lacked proof of interstate travel, therefore they proceeded under the state statute. Relying on *Williams*, the Eighth Circuit overturned Butler's conviction.

■ The ACA has been held to mean that prosecution for state crimes under the ACA may not occur when the "precise act" prohibited by the state law is defined and prohibited by the federal statute. *Williams*, supra; *U.S. v. Brown*, at 554; *U.S. v. Big Crow*, 523 F.2d 955 (8th Cir.1975), cert. den. 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327; *U.S. v. Patmore*, 475 F.2d 752 (10th Cir.1973).

■ In the case now before the court, the acts with which the defendants are charged could be punishable under the federal murder statutes, but the "precise act" of killing a child under the age of twelve is not murder in the first degree under federal law. *Brown*, at 554; see also *Fields v. U.S.*, 438 F.2d 205 (2d Cir.1971), cert. den. 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684. The Lewises are being prosecuted in this case under a state statute designed to punish specific conduct of a different character than that proscribed in the federal murder statute. The state statute is specifically designed to provide a deterrent to child abuse, a subject which is not addressed by federal law.

Other circuits have followed this reasoning as well. A defendant who allegedly recklessly shot a fellow hunter on federal land was indicted in the Sixth Circuit for violating the Assimilative Crimes Act, based upon a violation of Tennessee law. *U.S. v. Griffith*, 864 F.2d 421 (6th Cir.1988), cert. den. 490 U.S. 1111, 109 S.Ct. 3167, 104 L.Ed.2d 1029. The district court dismissed the indictment, but the court of appeal reversed holding that the defendant could be properly prosecuted under the Tennessee assault statute, pursuant to the Assimilative Crimes Act, even though there was a federal statute. The federal statute in that case only punished assaults committed with specific intent. The state statute operated on essentially a different theory and also punished reckless assaults.

In *U.S. v. Chaussee*, 536 F.2d 637 (7th Cir.1976), the defendant was found guilty of aggravated battery on a government reservation. The defendant had stabbed another inmate of the U.S. Penitentiary at Marion without provocation. The appellant's position was that although the federal and state statutes were worded somewhat differently, both statutes covered the same type of crime and thus, only the federal statute (with its lower penalty provision) was applicable.

*Chaussee* again involved the federal assault statute. The court reasoned that "assault" in the federal statute is a "more inclusive term" than "assault" as used in the state statute. The legislative history of 18 U.S.C. § 113 reveals that Congress used the term "assault" to including striking, beating and

wounding which would otherwise be considered batteries under state law as distinguished from simple "assault" defined in 18 U.S.C. 113(e) and therefore, the ACA was not properly used in this instance.[3]

The Sixth Circuit in *Griffith* examined the cases arising after *Williams* and grouped them into four principal categories:

1) cases in which all actions criminal under federal law are criminal under state law, but under state law additional acts are criminal as well[4];
2) cases in which the federal law encompasses a broader area than the state law and in which the state law usually carries greater penalties or ease of proof[5];
3) cases in which the state and federal laws overlap to a degree, but each occupies an area not covered by the other[6]; and
4) cases which involve the same pattern of laws as the preceding group, namely overlapping state and federal laws, but these acts fall into a disjunctive area where the acts constitute a crime under state law, but not under federal law[7].

The crux of the government's argument in the case at bar is that it is proceeding under the ACA because the state statute provides a theory essentially different from that in the federal statute, as in the third category of cases discussed above. The state statute embodies the compelling state interest in the protection of children under the age of twelve and in providing a deterrent against child abuse. The federal homicide statutes are silent in this regard.

The government asserts that Louisiana, by enacting R.S. 14:30(A)(5), has established a specially protected class of citizens, i.e. children under the age of twelve. Further, Louisiana has determined that if an individual, with specific intent to kill or to inflict bodily harm upon a victim less than twelve years of age, does so, then that action is egregious enough to classify it as first degree murder.

In support of its position, the government cited *United States v. Fesler*, 781 F.2d 384 (5th Cir.1986), cert. den. 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 661, in which the Fifth Circuit upheld the conviction of defendants charged with violating the Texas child abuse statute. The court reasoned that "it is important that the state statute seeks to punish a particular offense at which the federal statute is not aimed, child abuse." 781 F.2d at 391.

Although the defendants' memoranda in support of their motions to dismiss seem to posit that the government would be required to prosecute the defendants for first degree murder under the federal statute if they are prosecuting for first degree murder under the state statute, this is not the case. 18 U.S.C. § 1111 requires specific intent to kill or malice aforethought for a conviction of first degree murder. The statute also lists certain aggravating factors which would classify certain other murders as "first degree". The statute states that all other murders are murders in the second degree. LSA R.S. 14:30(A)(1) requires specific intent to kill or to inflict great bodily harm. The state stat-

**3.** The court stated that it was an established rule in the Seventh Circuit that "[w]here the government wrongly secures a conviction under the Assimilated Crimes Act, rather than under the relevant federal statute, the appropriate remedy is not a reversal of the conviction, but rather a vacating of the sentence and a remand to the district court for resentencing." *Id.*, at p. 645, citing *U.S. v. Word*, 519 F.2d 612, 618 (8th Cir. 1975).

**4.** *U.S. v. Williams*, supra.

**5.** *Shirley v. U.S.*, 554 F.2d 767, 768–769 (6th Cir.1977); (state law charge of armed robbery was a more specific and more harshly punished form of the federal crime of robbery; court held that where the federal crime "already occupied the field", the ACA could be used simply to enhance punishment or to facilitate conviction);

*U.S. v. Big Crow*, 523 F.2d 955, 958 (8th Cir. 1975) (state law prohibited assault resulting in serious bodily injury; court held that federal assault statute applied even if less severe penalty attaches).

**6.** *Fields v. U.S.*, 438 F.2d 205 (2d Cir.1971), cert. den. 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971) (the acts committed would have been a crime under the state malicious shooting statute or the federal assault statute, but the prosecution proceeded under state law through the ACA; court held use of ACA proper because the two statutes involved completely different theories of criminal conduct); See also *U.S. v. Brown*, 608 F.2d 551 (5th Cir.1979)(state child abuse statute better fit the facts of the case even though the case could have been prosecuted under the federal assault statute).

**7.** *U.S. v. Griffith*, supra.

ute in R.S. 14:30(A)(5) also defines first degree murder, however, as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve or sixty-five years of age or older.

Considering that the state statute seeks to punish child abuse, a particular offense at which the federal statute is not aimed, and that the "precise act" constituting first degree murder under the state statute is different from the federal definition of first degree murder, this court holds that the use of the ACA is proper and the defendants' motions to dismiss will be denied.