**UNITED STATES of America,
Plaintiff,**

**v.**

**Kirksey McCord NIX, Jr. and John Elbert Ransom, Defendant.**

**No. Crim. 1:91CR40PR.**

United States District Court,
S.D. Mississippi,
Southern Division.

May 30, 2000.

John Morgan Dowdy, Jr., U.S. Attorney's Office, Jackson, MS, Richard T. Starrett, James B. Tucker, U.S. Attorney's Office, Jackson, MS, Peter H. Barrett, U.S. Attorney's Office, Southern Dist. of Mississippi, Biloxi, MS, for U.S.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the Fifth Circuit dated February 1, 2000. The Fifth Circuit has remanded this case for determination of "whether the untimely filing of the Notices of Appeal was due to excusable neglect under *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 1496–1500, 123 L.Ed.2d 74 (1993) and/or whether Nix and Ransom can show 'good cause' within the meaning of Amended Fed.R.App.P. 4(b)(4) which was effective at the time the District Court entered its Order following [the first] remand."

Pursuant to the remand of February 1, 2000, the Court entered an Order on March 7, 2000 allowing the parties an opportunity to file additional legal briefs. Those briefs having been filed, the matter is now ripe for consideration.

This case arises out of the 1991 convictions of the Defendants Kirksey McCord Nix and John Elbert Ransom. This 1991 trial, and three subsequent trials[1], in-

---

[1] In addition to Defendants Nix and Ransom, the 1991 case sub judice, S91–40, involved charges against strip club operator Mike Gillich and paralegal LaRa Sharpe. Gillich and Sharpe were convicted as well. Nix and Ransom filed motions for a new trial which were overruled on the 9th day of March, 1992. After these convictions were affirmed by the Fifth Circuit, 995 F.2d 49 (5th Cir.1993), writs of certiorari were denied by the Supreme Court as follows: 510 U.S. 885, 114 S.Ct. 234, 126 L.Ed.2d 188 (1993) and 510 U.S. 1002, 114 S.Ct. 577, 126 L.Ed.2d 476 (1993). Defendant Nix was sentenced to three consecutive five year terms or a total of fifteen years, consecutive to the two life sentences he was serving in Louisiana. Defendant Ransom was sentenced to two consecutive five years terms for a total of ten years consecutive to another federal sentence he was serving in Georgia.

The second case, S90–77, consolidated with S90–00004, involved numerous drug transactions. Nix was charged in this indictment as well as Mike Gillich and Leonard Francis Swetman. This case which took about a week and a half to try resulted in guilty verdicts against all defendants on at least some counts and was tried in 1992. Defendant Nix's sentence was for two five-year concurrent terms in S90–77 and two five-year concurrent terms in S90–00004, the sentences in S90–77 and S90–00004 to be concurrent with each other and consecutive to prior sentences.

2:93cr13 was the third case and involved charges against co-defendant Gillich and his girlfriend, Frances Salisbury, who were charged with witness tampering relating to the 1991 case. After the jury was selected in that case, Gillich began to cooperate with the government and a mistrial was entered.

The 1997 trial in case 2:96cr30 involved defendant Leslie Holcomb, who was convicted as the actual murderer; Peter Halat, the former mayor of Biloxi, and one time law partner of the murder victim, Judge Vincent Sherry; Glenn Cook and LaRa Sharpe along with Defendant Nix. This Court denied motions for a new trial on September 18, 1997, and these convictions were affirmed by the Fifth Circuit on the 26th day of November, 1999. 193 F.3d 852 (5th Cir.1999). Various writs of certiorari were denied by the U.S. Supreme Court as follows: — U.S. —, 120 S.Ct. 1202, 145 L.Ed.2d 1105, 68 U.S.L.W. 3534 (Feb. 22, 2000) and — U.S. —, 120 S.Ct. 1218, 145 L.Ed.2d 1118 (2000). Defendant Nix was sentenced to two concurrent life sentences and twenty-nine five year concurrent sentences all consecutive to his prior terms.

Nix also had two civil cases filed in this Court, the first being 1:92cv320 wherein he sought habeas corpus to prevent his being transferred back to Louisiana State Penitentiary. Judge Bramlette of this Court dismissed this habeas corpus petition on June 1,

volved a complex scam conducted from Angola State Penitentiary located in Louisiana against homosexuals throughout the United States and Canada which garnered many hundreds of thousands of dollars of ill gotten gain. According to testimony Defendant Nix was attempting to raise money so he could attempt to bribe then Governor Edwin Edwards to pardon Nix from his convictions for burglary, robbery and murder of a New Orleans groceryman.

Testimony revealed that the conspiracy not only involved the homosexual scam but drug dealing and insurance fraud. A hundred thousand dollars of ill gotten gain was allegedly missing and for that reason as well as other reasons a contract was put out for the murder of State Circuit Judge Vincent Sherry. In the execution style murder that resulted, Judge Sherry along with his wife Margaret Sherry were brutally murdered. Testimony revealed Defendant Nix to be the consummate con artist and the Defendant Ransom was alleged to have been a hit man who altered guns by installing silencers so that they could be used in execution style murders. The 1991 trial lasted some six weeks and resulted in the conviction of Defendant Nix on the charges of conspiracy, wire fraud, and travel in interstate commerce to commit murder for hire.

Defendant Ransom, as a result of that trial, was convicted of conspiracy and wire fraud. The Defendant Nix at the time of that trial was serving two life sentences in the Louisiana State Penitentiary. The Defendant Ransom was serving a fourteen year term in federal custody for firearms violations and extortion which occurred in the State of Georgia. After this Court

overruled motions for a new trial, both Defendants appealed their 1991 jury convictions to the Fifth Circuit. The Fifth Circuit affirmed these convictions on the 25th day of June, 1993. 995 F.2d 49 (5th Cir.1993), *cert. denied,* 510 U.S. 885, 114 S.Ct. 234, 126 L.Ed.2d 188 (1993) and 510 U.S. 1002, 114 S.Ct. 577, 126 L.Ed.2d 476 (1993).

On June 22, 1995, almost exactly two years after the Fifth Circuit affirmed their 1991 convictions, Defendants moved this Court for a new trial based on allegedly newly discovered evidence. Before the Court could rule on this motion, Defendant Nix requested that the Court refrain from ruling until after the conclusion of his 1997 trial in 2:96cr30PG. Ransom joined in this request to stay. Ransom later filed a motion to sever on or about August 13, 1997. The 1997 trial likewise lasted for some six to seven weeks and resulted in the conviction of Defendant Nix for conspiracy to commit racketeering, conspiracy to escape and wire fraud. This conviction was affirmed by the Fifth Circuit on November 26, 1999, 193 F.3d 852 (5th Cir.1999). Nix's petition for writ of certiorari was denied by the United States Supreme Court. —— U.S. ——, 120 S.Ct. 1218, 145 L.Ed.2d 1118 (2000).

Shortly after the conclusion of the 1997 trial, on October 6, 1997, this Court denied Defendants' motion for a new trial as to Defendant's 1991 convictions. The Court again notes that the delay in ruling on this motion was largely occasioned by the Defendants' request for the Court to refrain from ruling until after the 1997 trial.

1993. Nix filed cause number 1:98cv247, Nix v. Gaston, in the Middle District of Louisiana, but it was transferred to this District. Judge Bramlette dismissed that case on March 25, 1999, for failure to serve process on the Defendant and failure to notify the Court of an address change.

Altogether Defendant Nix has received sentences by this Court, and affirmed by the Fifth Circuit, of two concurrent life sentences, plus

twenty consecutive years, consecutive to these two concurrent life terms, all consecutive to his two Louisiana life sentences. Nix's motion for a new trial would impact only fifteen years of these sentences. Defendant Ransom, 62 years old, having completed his previous federal sentence in Georgia is now serving his ten-year sentence imposed by this Court and affirmed by the Fifth Circuit Ransom's appeal could impact all of his remaining sentence.

## MOTION FOR A NEW TRIAL

A motion for a new trial ordinarily must be filed within ten days of a judgment of conviction. (Fed.R.App.P.4). A motion for a new trial based on newly discovered evidence is an exception to this rule and may be granted only in accordance with strict rules. The burden of establishing a right to a new trial based on newly discovered evidence rests with the defendant. *United States v. Geders,* 625 F.2d 31 (5th Cir.1980).

■ The Fifth Circuit has concluded that a new trial is not justified unless the Defendant can establish

(1) That the evidence was newly discovered and was unknown to the defendant at the time of the trial; (2) That the evidence was material, not merely cumulative or impeaching; (3) That it would probably produce an acquittal; and (4) That failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*United States v. Lopez–Escobar,* 920 F.2d 1241, 1246 (5th Cir.1991).

Almost five years after these Defendants were convicted, two years after their convictions were affirmed by the Fifth Circuit, these Defendants filed a 118 page motion alleging seven grounds for a new trial. The grounds alleged are (1) That the conviction was obtained by failure of the prosecution to disclose evidence favorable to the defendants. (2) The use of perjured testimony by the government. (3) Prosecutorial misconduct in making untruthful statements to the court. (4) Prosecutorial misconduct amounting to obstruction of justice. (5) Use of false evidence by the government. (6) Double jeopardy violations in regard to the conspiracy counts, and (7) Ex post facto application of statutes involving the ITAR travel offense counts.

The last two grounds asserted by Defendants are legal arguments that clearly are inappropriate for a motion for a new trial based upon newly discovered evidence.

The other grounds were largely ruled on by this Court during the course of the trial. This Court concluded that Defendants did not justify any basis for a new trial and that Defendants did not establish any of the five elements set forth by the Fifth Circuit and denied the motion. "In most new trial motions based on newly discovered evidence, the proffered evidence goes directly to proof of guilt or innocence." *United States v. Williams,* 613 F.2d 573, 575 (5th Cir.1980), cert. denied 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980). The allegations raised by the Defendants do not go directly to the issue of innocence. Neither do Defendants allege that the bulk of the information was not known to them before trial, but rather that their prior knowledge was confirmed by subsequent information which they obtained, largely from a book entitled *Mississippi Mud* and written by Pulitzer Prize winning author Edward Humes about the 1991 case, subsequent trials and related events.

In all, Defendants have filed more than 2000 pages of material in regard to the subject motion for new trial and on the issue of the timeliness of their notice of appeal. This does not include the responses of the Government and the reams of paper used by the Government.

Illustrative of the convoluted conclusory arguments made by Defendants is their allegation that this matter was prosecuted because U.S. Attorney George Phillips was a Republican and that Defendant Halat was the Democratic Mayor of Biloxi. What Defendants do not point out is that Defendant Halat was not prosecuted in the 1991 case prosecuted while George Phillips was U.S. Attorney, but that Halat was later indicted and tried during a time when Brad Pigott, who was appointed by a Democrat, was U.S. Attorney.

Defendants also allege that Gillich began to provide testimony to the Government, not disclosed to the Defendants, before the 1991 trial. There is absolutely no evidence to this fact. In fact all of the evidence

before this Court is to the contrary. Gillich did not begin cooperating with the Government, according to testimony accepted by a jury as being truthful, until well after the 1991 trial was concluded. Gillich began cooperating during his 1993 trial for witness tampering that occurred as a result of, but well after, the 1991 trial. As noted, the 1997 convictions based in part on Gillich's testimony have been affirmed by the Fifth Circuit.

Defendants allege that they were unaware that Nix's ex-wife, Kellye Nix, who was also his step-daughter, was arrested and placed in the Harrison County jail for drug or alcohol violations and that such arrest was erased and no traces of it can be found. What Nix does not acknowledge is that testimony established that he coerced Kellye Nix to marry him by telephone by promising to get her off a drug charge in Biloxi. There is no record of this charge.

Defendants also allege that a former client of murdered Judge Sherry could have had a motive to kill the Sherrys and that this was not disclosed. He makes numerous other conclusory allegations about state officials being federalized and about the fact that many governorships, senatorships, and congressional seats have been won by the Republican Party for the first time since Reconstruction days. The Court is not quite sure as to what relevance this has to the motion of these Defendants for a new trial.

Defendants also allege that their conviction was due in part to the fact that under President Richard Nixon, federal funding was given to the State of Mississippi and that Rex Armistead who was hired by the Sherry family as a private investigator was instrumental in getting this assistance. Again, the Court is not quite sure what this has to do with Defendants' motion for a new trial.

Defendants also argue that they were prosecuted because of a memorandum from U.S. Attorney General Dick Thornburgh. Again, this does not establish a basis for Defendants winning a new trial on the grounds of newly discovered evidence. Defendant Nix acknowledges that he was "born to privilege, prodigy of two Oklahoma politician-attorneys, admittedly [who] in a rebellion of youth destroyed his life." This sounds more like a confession than the basis for a new trial.

In ruling on Defendant's motion for a new trial the Court concluded as follows:

The Court having reviewed the voluminous paperwork filed by Petitioner Kirksey Nix and joined in by co-Defendant John Elbert Ransom and being fully advised in the premises notes the obvious. Defendant Kirksey Nix has time on his hands. Although Defendant Nix has one of the most fertile and imaginative minds to which the Court has been exposed, he has demonstrated absolutely no basis for relief. The Defendant's motion is therefore dismissed as being *frivolous.* Defendant Ransom's motion to sever from Defendant Nix is hereby moot and therefore dismissed. (Emphasis added.)

### THE TIMELINESS OF DEFENDANTS' NOTICES OF APPEAL

The order denying Defendants' motion for a new trial as to the 1991 convictions was signed by the Court on October 6, 1997, and filed on October 8, 1997, making the deadline for filing notices of appeal October 18, 1997. October 18 fell on a Saturday and therefore the final day the notices of appeal could be filed was Monday, October 20, 1997.

Defendant Nix's pro se Notice of Appeal is dated October 21, 1997 and was filed with the District Court on October 22. Ransom's pro se Notice of Appeal is dated October 26 and was filed on October 31, 1997. On objection by the Government, the Fifth Circuit found that both of these Notices of Appeal were dated after October 20 and therefore were untimely. The Fifth Circuit on September 23, 1998, en-

tered its first remand order to this Court for determination as to whether or not there was excusable neglect in the late filing of Nix's and Ransom's Notices of Appeal.

As a result of the first remand, this Court by Order dated December 4, 1998, found that there was no excusable neglect because the Defendants had failed to comply with a local rule of this Court which required Defendants to keep on file with the Clerk of the Court their current addresses. In light of that direct violation of this Court's local rules, the Court found no excusable neglect and the matter was returned to the Fifth Circuit. Defendants again appealed resulting in the remand now before the Court.

The record reflects that Defendants did not immediately receive copies of the Court's October 6 Order, Defendant Nix receiving it on the day the notices of appeal were due.

## THE PIONEER CASE

The Fifth Circuit has again remanded this matter to this Court for further consideration in light of *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 1496–1500, 123 L.Ed.2d 74 (1993). In that case the Supreme Court stated

> Although *inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable neglect,"* it is clear that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept" [FN 8] and is not limited strictly to omissions caused by circumstances beyond the control of the movant. (footnotes omitted). (emphasis added).

At 1496.

■ The Court concluded

> ... the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, ... the

danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. (citation and footnotes omitted).

At 1498.

Significantly the Court stated

> To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the bankruptcy court abused its discretion in declining to find the neglect to be "excusable."

At 1500.

■ Prior to the *Pioneer* case this Court had routinely interpreted Fifth Circuit precedent to hold that "excusable neglect" could never be shown unless the failure to timely file was caused by some force outside the control of the appealing party. The *Pioneer* case clearly established that the question of "excusable neglect" cannot be determined by such a bright line. The Court, in *Pioneer,* held that "excusable neglect" or "good cause" is to be determined based upon equitable consideration considering the totality of the circumstances.[2]

Subsequent opinions of the United States Supreme Court and of the Fifth Circuit Court of Appeals have clearly established that the *Pioneer* ruling applies not only in bankruptcy cases, but also applies in criminal cases. The Supreme Court in *Stutson v. U.S.*, 516 U.S. 193, 116 S.Ct. 600, 133 L.Ed.2d 571 (1996), vacated a judgment of the Eleventh Circuit, and specifically held that *Pioneer* did apply to criminal cases. The Fifth Circuit addressed the issue in *U.S. v. Clark*, 51 F.3d 42 (5th Cir.1995), and again in *U.S. v. Clark*, 193 F.3d 845 (5th Cir.1999). Nei-

---

**2.** Understanding that the Court is required to consider "all relevant circumstances" and make an "equitable" determination the Court in this opinion goes into considerable detail.

ther the subsequent opinion of the Supreme Court nor the subsequent opinions of the Fifth Circuit have done much to define the contours of the *Pioneer* ruling.

In the 1995 *Clark* case the Fifth Circuit in another second remand stated "In an unpublished opinion, we held that the notice of appeal was untimely, having been filed *two days* after the ten-day limit provided under Federal Rule of Appellate Procedure 4(b)", 51 F.3d at 42–43, (emphasis added). The district court denied Clark's motion concluding that the "excusable neglect standard is a 'strict one' and that 'a failure to understand and comply with the rules governing appeals will virtually never qualify as excusable neglect' under Rule 4(b)." *Id.* at 43. In view of the *Pioneer* case the Fifth Circuit, re-remanded the case to the district court concluding that the district court had utilized a standard of review that was too strict. The Fifth Circuit in re-remanding the case noted:

> The change in our case law made by *Pioneer* is, however, more subtle than dramatic. This Circuit recognized before *Pioneer* that "under proper circumstances," Rule 4(b)'s excusable neglect provision encompasses "ignorance or neglect of counsel in filing late notices of appeal." (citation omitted).

*Id.* at 44.

> The Court concluded

> To the extent, then, that our prior decisions strictly interpret excusable neglect in conflict with *Pioneer*, they are disapproved. Accordingly, we remand this matter to the district court to reconsider Clark's motion under the standard announced in *Pioneer*. In so doing, however, we do not hold that it would be an abuse of discretion for the district court on remand, to find no excusable neglect on these facts. As Clark conceded in oral argument, this is a garden variety criminal appeal; there was nothing complicated or novel about the procedural posture of the case, and noticing an appeal here required nothing unusual or

difficult. The applicable rules are, furthermore, unambiguous, and whatever confusion Clark's counsel may have suffered because of these rules, we clearly cannot say that his confusion mandates a finding of excusable neglect as a matter of law. (citations omitted).

*Id.* at 45. The Fifth Circuit in 1995 clearly stated that if the trial court concluded that a two day delay in filing a notice of appeal did *not* constitute "excusable neglect" that such finding would not per se constitute an abuse of discretion.

In the 1999 *Clark* case the court was faced with a filing that was only *one day* late. In that case trial counsel attempted to quit representing the defendant without permission of the court and without timely filing an appeal. The Fifth Circuit concluded that this was ineffective assistance of counsel, and due to ineffective assistance of counsel that the trial court should have found such a delay to be "excusable neglect." 193 F.3d 845, 846–847. However, the Fifth Circuit dismissed the appeal since the sentence of the court had already terminated and the issue was moot.

## THE FIVE PIONEER FACTORS

### (a) Prejudice to the Government

■ The *Pioneer* case mandated the analysis of five factors. The Court will now consider these five factors. First, the Court will consider whether or not the party opposite, the Government, will be prejudiced. This Court concludes the Government will be prejudiced if this appeal is allowed to go forward. Counsel for the Government argues that "many of the witnesses were victimized because they were elderly back in the 1980s and their memories have surely faded. At least one of the witnesses, Johnny Koler, has since died. One of the prosecutors and the chief investigator have since retired from federal service." While the death of Johnny Koler has not been established before this Court as a fact, nor has the retirement of the prosecutor and chief investigator been es-

tablished as a fact, nevertheless, this Court does take judicial notice of the fact that after almost ten years, it would certainly be much more difficult, if not impossible, to try such a complex case. Furthermore, in view of the fact that a jury weighed the evidence in this case, this Court weighed the evidence in this case, the Fifth Circuit affirmed this case, and this Court has determined that the motion under consideration does not satisfy any of the elements necessary to be established by Defendant under Fifth Circuit precedent and is entirely frivolous, and after almost ten years, it certainly would prejudice the Government to have to respond to the 2,000 pages of mostly totally irrelevant material.

### (b) The Length of Delay

The second *Pioneer* factor is the length of delay. This is the only *Pioneer* factor that militates in favor of Defendants. Nix's notice of appeal was signed only one day beyond the deadline and it was filed two days after the deadline. Ransom's notice was dated six days beyond the deadline and was filed eleven days beyond the deadline. This is not an inordinate delay. However, as the Fifth Circuit noted in its first remand of this case "A timely notice of appeal is a mandatory pre-condition to the exercise of appellate jurisdiction." The only way that Defendants can avoid lack of jurisdiction is by establishing "excusable neglect" or "good cause."

### (c) Potential Impact on the Judicial Proceedings

The third *Pioneer* factor to be analyzed is the potential impact on the judicial proceedings.[3] The primary impact as to this factor will be the impact that it has on the Fifth Circuit. While the Fifth Circuit is in a better position than this Court to determine the impact this appeal will have on the Fifth Circuit, this Court does take judicial notice that the Fifth Circuit is an industrious judicial body, that it is one of the busiest circuits in the nation, and that the Fifth Circuit is too busy to be required to spend time on a frivolous appeal filed out of time, especially one containing as much totally irrelevant material as contained in the 2000 pages filed by Defendants.

### (d) The Reason for the Delay and Whether or Not the Cause of Delay was Within the Reasonable Control of Movants.

The fourth *Pioneer* factor is the reason for the delay and whether or not the cause of the delay was within the reasonable control of the movants. The fact that Defendants did not immediately receive the Court's Order would ordinarily be in Defendants' favor. However, the reason for the delay was that Defendants Nix and Ransom failed to provide the Court Clerk with a copy of their current legal address as required by the Local Rules. As a mitigating circumstance, they were being moved from prison facility to prison facility and that did require some effort on their part in keeping their current legal addresses on file with the Clerk's office. The reason for this delay certainly was within the reasonable control of the Movants. All they had to do was write a notice to the Clerk giving the Clerk their new address. That was not a complicated nor difficult thing to do. These two Defendants were well aware of their responsibility to keep their current addresses on file with the Clerk for they had filed many documents before this Court.

### (e) Whether or Not Defendants Acted in Good Faith

The fifth *Pioneer* factor to be considered by the Court is whether or not the Defendants acted in good faith. The decision in

---

**3.** Since the third *Pioneer* factor relates to the "... potential impact on judicial proceedings....", 113 S.Ct. at 1498, plural and is not limited in any way to only the judicial proceedings under consideration, the Court has interpreted that factor to apply to the impact that the delay would have on the Court in general. However, if that factor was intended to apply only to the case sub judice, then the analysis that the Court has already made as to the first *Pioneer* factor would also control as to this factor.

*Pioneer* does not specify whether the question of bad faith is limited to just the filing of the notice of appeal or whether the question of bad faith relates to all facts surrounding the action or motion under consideration. The specific wording is "taking account of all relevant circumstances surrounding the party's omission." 113 S.Ct. at 1498.

The Court concludes that under the facts of this particular case the *Pioneer* test of bad faith should be applied not only to the actual filing of the notice but to the question of bad faith in filing the motion itself and the 2000 pages of irrelevant material. The Court further concludes that the Defendants did not act in bad faith by filing the notices of appeal two to eleven days late. However, this Court finds that Defendants did act in bad faith in filing this frivolous 118 page motion together with almost 2000 pages of supporting documents. This Court has never been confronted with a more massive volume of irrelevant material than that filed in this matter.

Defendants seek to excuse their failure to file their current address with the Clerk by stating that the Clerk had other notice of their whereabouts by the filing of various and sundry other pleadings. However, the Court finds that to place the burden of determining the correct mailing address on the Clerk for all pro se litigants before the Court by reference to pleadings which are filed is unreasonable. Local Rule 17 clearly requires that each pro se litigant keep the Court informed of a correct mailing address. It would be an untenable burden on the Clerk of this Court to track down and determine the current and correct address of every pro se litigant before it. The Defendants' assertions to the contrary are without merit.

Although this Court has interpreted *Pioneer* to apply the bad faith test to both the filing of the notices of appeal as well as the actual motion itself, under the facts of this particular case, nevertheless, even if the Court had concluded otherwise, based on its analysis of the other *Pioneer* factors, this Court would still have concluded that Defendants have not established "excusable neglect" nor "good cause".

## DISTINCTION BETWEEN THIS CASE AND PIONEER

In *Pioneer*, an attorney for creditors of a bankrupt failed to properly understand an order of the Bankruptcy Court which the Supreme Court found to contain "dramatic ambiguity" and not the standard type order usually utilized. 113 S.Ct. at 1500. For that reason, as well as the fact that the attorney left his old law firm creating some confusion, the notice was filed some twenty days late. The Bankruptcy Court refused to accept the late filing and the creditors were not allowed to prove their claims. Thus presumably legitimate debts were summarily discharged based upon this late filing. The creditors were, therefore, never given their day in court.

Having one's day in court is basic, fundamental, and a matter of right, in our judicial process. The right to review by appellate court is likewise basic, fundamental, and a matter of right. However, a motion for a new trial on the basis of newly discovered evidence, though fundamental, is not basic nor a matter of right in our judicial process. The motion for a new trial is basically a safety valve for extraordinary situations to prevent a fundamental miscarriage of justice. It is intended to provide relief to one who has been convicted, but is actually innocent. Defendant's motion for a new trial does not come anywhere near establishing their innocence or that a miscarriage of justice has occurred. It does not even raise a strong possibility of their actual innocence. It does not comport with any of the established criteria for granting such a motion.

Unlike the creditors in *Pioneer*, Nix and Ransom have had their day in court. They were tried by a jury and found guilty. This Court overruled Defendants'

motions for a new trial. The Fifth Circuit considered the record in this matter and affirmed the convictions. The Supreme Court declined to issue a writ of certiorari. Defendants waited almost five years to file their extensive, lengthy, frivolous motion for a new trial. Defendants further delayed the final resolution of this motion until after Nix's 1997 trial.

In Pioneer a creditor would never have had an opportunity to establish its claim due to missing a deadline. A legitimate debt could have been summarily released due to that mistake. We are not confronted with the situation in this case where defendants have not had an opportunity to present their cases in court. They have had their day in court. They have had their day in court numerous times. A jury convicted them, this Court denied their motion for new trial and sentenced them, the Fifth Circuit affirmed, the Supreme Court denied certiorari, and this Court denied their present motion as being frivolous.

### GOOD CAUSE

The Court was directed by the Fifth Circuit not only to review the Defendants' late filing for "excusable neglect" but also to determine if "good cause" existed under amended Federal Rule of Appellate Procedure 4(b)(4). This Court can ascertain no difference in the standard enunciated by Pioneer or by U.S. v. Clark, supra, nor by any other Supreme Court or Fifth Circuit decision between "good cause" and "excusable neglect." In fact, the cases unanimously seem to discuss "excusable neglect" and "good cause" in conjunction, making no distinction between the two.

### CONCLUSION

Subsequent to Pioneer the Second Circuit Court of Appeals carefully analyzed a situation regarding the late filing of a notice of appeal. In Weinstock v. Cleary, Gottlieb, Steen and Hamilton, 16 F.3d 501 (2nd Cir.1994). That Court held "the excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the Federal Rules." Id. at 503. (Other citations omitted.) In Clark, 51 F.3d at 44, the Fifth Circuit cited this Second Circuit opinion with approval.

That is the same situation facing this Court. There was nothing complicated about keeping the Clerk informed of Defendants' current address. The parties merely had to inform the Court of their current address in order to be timely notified of all orders entered by the Court. Both of these litigants are experienced pro se litigants with a great number of years in the federal and state prison systems and both have filed voluminous litigation before this Court as well as before the Fifth Circuit.

This Court recognizes that mere inadvertence, mistake or simple negligence on the part of a pro se litigant may be viewed as excusable neglect. Nevertheless, this Court is required under the teachings of Pioneer to take into account "all relevant circumstances surrounding the parties' omission" and make an "equitable" determination as to whether Defendants should be excused for their failure to timely file their notice of appeal, thus giving the Fifth Circuit jurisdiction of this appeal despite the untimely filing. Although the Supreme Court in Pioneer stated that "excusable neglect is not limited strictly to omissions caused by circumstances beyond the control of the movant," the Supreme Court did conclude that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" 113 S.Ct. at 1496. The Supreme Court noted that if there had been prejudice to the party opposite or any indication of bad faith that it would not have concluded that the Bankruptcy Court abused its discretion in declining to find the neglect to be excusable. The Fifth Circuit in Clark, supra, stated basically the same thing.

 

We have numerous safeguards in the federal rules, the purpose of which is to guarantee a fair trial and insure that innocent persons are not convicted. The rules are also designed to protect society from law breaking so that society can live in peace without fear for their safety. The rules are intended to provide justice. At some point there must be finality.

> "One of the law's very objects is the finality of its judgments.... 'Without finality, the criminal law is deprived of much of its deterrent effect.' .... Perpetual disrespect for the finality of convictions disparages the entire criminal justice system.... 'There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern....'"

*McCleskey v. Zant*, 499 U.S. 467, 491–92, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Plaintiffs have made no showing that justice will not prevail nor that a miscarriage of justice will occur if they are not allowed to proceed with this additional appeal.

Nix's 1997 convictions firmly established that the conclusory arguments made in Defendants' motion for a new trial simply cannot and do not stand up under scrutiny. Nix's convictions in the 1997 trial involved crimes and facts additional to the crimes and facts established at his 1991 trial, but the 1997 trial also involved many of the basic facts established by Defendants' 1991 trial. The same issues raised by Defendants in their motion for a new trial would have been relevant to much of the evidence introduced at Nix's 1997 trial. These issues were not raised by Nix in that trial, or being raised, the Court ruled against Nix, and the Fifth Circuit affirmed. 193 F.3d 852. Defendants' efforts to obtain a new trial from their 1991 convictions is simply a sham, another attempt at playing a con game. The judicial system cannot and should not permit such abuse.

Convicted murderers and those who have been convicted of multiple crimes are entitled to their day in court but they are not entitled to manipulate nor dominate the judicial process and they are not entitled to file frivolous appeals out of time. Even non frivolous criminal appeals may only be filed out of time when there is "excusable neglect" or "good cause" shown. This is not such a case.

Defendant Nix has taken up more time of this Court and possibly the Fifth Circuit than most any defendant of which this Court is aware. In view of all the circumstances, this Court concludes that the Defendants have neither established "good cause" nor "excusable neglect."

The Defendants have also moved this Court to stay this matter and to allow them limited discovery. The facts which Defendants argue have been accepted by the Court as true. In light of this Court's finding and after careful consideration of the matter, the Court finds that that request is without merit and it is therefore denied.